Joyce **CHRISTY**, M.D., Individually and as Next Friend and Parent of Cole Hocker, Alex Hocker, and Erin Hocker, and as the Executor of the Estate of Daniel L. Hocker, Deceased, Appellant,

v.

Daniel E. **MIULLI**, D.O., an Individual, Douglas R. Koontz, M.D., P.C., a/k/a Iowa Neurological Surgery, P.C. and f/k/a Neurological Surgery, P.C., and Mercy Hospital Medical Center, legally known as Catholic Health Initiatives Iowa, Corp., Appellees.

No. 03–2055.

Supreme Court of Iowa.

Feb. 18, 2005.

696

Jerry Crawford and Jim Quilty of Crawford Law Firm, Des Moines, for appellant.

Barry G. Vermeer and Loree A. Nelson of Gislason & Hunter L.L.P., Des Moines, for appellees Miulli and Koontz P.C.

Roberta M. Anderson of Schroeder & Anderson, Mason City, for appellee Catholic Health Initiatives.

TERNUS, Justice.

Nearly three years after her husband's death, plaintiff, Joyce Christy, filed a wrongful death action against the physician who had performed a biopsy procedure on her husband a week before he died, the physician's employer, and the hospital where the procedure took place. The district court dismissed the plaintiff's suit on the defendants' summary judgment motions, ruling the statute of limitations barred the claims asserted by Christy. On appeal, the plaintiff contends the district court erroneously rejected her argument that the statute of limitations was tolled under the doctrine of fraudulent concealment. She also asserts the court applied the wrong statute of limitations to the loss-of-parental-consortium claims she brought on behalf of the decedent's minor children. Upon our review of the record and the controlling legal principles, we affirm the dismissal of the plaintiff's wrongful death claim and loss-of-spousal-consortium claim against the hospital, reverse the dismissal of these claims made against the physician and his employer, and reverse the trial

court's dismissal of the children's loss-of-consortium claims as to all defendants.

## I. *Background Facts and Proceedings.*

The facts viewed most favorably to the plaintiff reveal the following events pertinent to our consideration of this appeal. *See generally Cubit v. Mahaska County,* 677 N.W.2d 777, 779 (Iowa 2004) (stating court, in considering summary judgment ruling, " 'view[s] the entire record in a light most favorable to the nonmoving party [and] indulge[s] in every legitimate inference that the evidence will bear' in favor of the nonmoving party" (citation omitted)). On September 21, 1998, the defendant, Daniel Miulli, D.O., performed a brain biopsy on the plaintiff's husband, Daniel Hocker, for a suspected brain tumor. The procedure took place at Mercy Hospital Medical Center, which is operated by the defendant, Catholic Health Initiatives Iowa, Corp. At some point during the operation, Hocker developed a brain hemorrhage and his condition worsened significantly. Nonetheless, Dr. Miulli would later state in the medical records that the procedure had been performed without complication. Post-operatively, Hocker was admitted to the intensive care unit of the hospital, where, after a series of additional complications, he died on September 28, 1998.

In the period immediately following the biopsy procedure, Dr. Miulli told Christy of the bleeding that had taken place, but wrongly represented to her that the hemorrhage occurred some distance away from the biopsy site. He suggested that perhaps an unrelated infectious process such as viral encephalitis caused the bleeding. (After this lawsuit was filed, Dr. Miulli conceded the cause of Hocker's death was Dr. Miulli's error in performing the biopsy in the wrong location, thereby causing the hemorrhage.) Dr. Miulli repeated his false report of what had occurred in the medical records, including recording a final diagnosis of viral encephalitis.

In the spring of 1999, the Mayo Clinic examined the decedent's brain and prepared a pathology report. This report, provided to Christy, confirmed the presence of a brain tumor but did not mention viral encephalitis. Christy testified in a deposition that the absence of any discussion of viral encephalitis in the Mayo Clinic report did not raise any questions in her mind because she did not know whether the examination conducted by that institution could have identified encephalitis in the brain tissue. Christy later discussed this report with a Des Moines oncologist to learn whether there were any hereditary aspects to her husband's brain tumor that might be of concern to their children, but she did not further investigate the cause of her husband's death.

In August 1999, an investigator with the Iowa Board of Medical Examiners contacted Christy about Dr. Miulli's treatment of her husband. Christy informed the investigator that she thought Dr. Miulli had provided excellent care to her husband. Later, when she told Dr. Miulli that the board had been asking questions about him, Dr. Miulli explained that a competing neurosurgeon had raised some questions, leading Christy to believe it was "a usual turf war kind of thing that you see in medicine all the time." (The plaintiff is also a medical doctor, specializing in family practice.) During this same conversation Dr. Miulli told Christy about his purported finding of a correlation between viral conditions and patients with brain tumors, and that he was interested in doing a research project on the alleged connection.

Nearly three years after Hocker's death Christy had a conversation with a friend of hers that led to the filing of the present lawsuit. In July 2001 a friend reported to

Christy that an anesthesiologist involved in Hocker's biopsy had stated that no one had checked the coordinates for the biopsy location and that the bleeding occurring during the procedure was related to the site where the biopsy was performed, contrary to what Dr. Miulli had consistently stated. Once Christy had this information she promptly filed this action against the defendants in August 2001.

Christy brought a claim for wrongful death as the executor of her husband's estate and also filed loss-of-consortium claims on her own behalf and on behalf of the couple's three minor children. She alleged in her petition that Dr. Miulli's representations concerning the cause of her husband's death misled her and caused her to belatedly discover the actual cause of the decedent's death. After conducting discovery, the defendants filed motions for summary judgment, alleging the suit had not been filed within the applicable statute of limitations for medical malpractice claims, Iowa Code section 614.1(9)(*a*) (1999). Christy contended Dr. Miulli's fraudulent concealment of the true cause of Hocker's death tolled the statute of limitations, and in any event, the children's loss-of-consortium claims were timely filed under the statutes of limitations set forth for minors in section 614.1(9)(*b*) or section 614.8. The district court concluded the lawsuit had not been timely filed notwithstanding Christy's claim of fraudulent concealment, and that the extended limitations periods did not apply to the children's claims. The court dismissed Christy's suit against all the defendants, and she then filed this appeal.

## II. *Scope of Review.*

■ Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Iowa R. Civ. P. 1.981(3). "A fact question is generated if reasonable minds can differ on how the issue should be resolved." *Walker v. Gribble,* 689 N.W.2d 104, 108 (Iowa 2004). We review the district court's ruling on a motion for summary judgment for correction of errors of law. *Schlote v. Dawson,* 676 N.W.2d 187, 188 (Iowa 2004).

## III. *Wrongful Death and Loss–of–Spousal–Consortium Claims.*

■ A. *The parties' contentions.* The parties agree the statute of limitations for medical malpractice contained in section 614.1(9)(*a*) governs the claim brought on behalf of Hocker's estate and Christy's claim for loss of spousal consortium. (To simplify our discussion, we will sometimes refer to these claims jointly as the wrongful death claim.) Paragraph (*a*) of section 614.1(9) provides in relevant part:

9. *Malpractice.*

*a.* Except as provided in paragraph "*b*", those [actions] founded on injuries to the person or wrongful death against any physician and surgeon . . . or a hospital licensed under chapter 135B, arising out of patient care, [must be brought] within two years after the date on which the claimant knew, or through the use of reasonable diligence should have known, or received notice in writing of the existence of, the injury or death for which damages are sought in the action, whichever of the dates occurs first, but in no event . . . more than six years after the date on which occurred the act or omission or occurrence alleged . . . to have been the cause of the injury or death. . . .

Iowa Code § 614.1(9)(*a*). The parties also appear to agree that the limitations period

commences on the date the plaintiff has knowledge of the *death* giving rise to the cause of action and not when the plaintiff learns of the wrongful act that caused the death. *See Schultze v. Landmark Hotel Corp.,* 463 N.W.2d 47, 48 (Iowa 1990) (holding, in wrongful death case, that statute of limitations in section 614.1(9) "commences on the date the *death* is discovered" (emphasis added)). Thus, unless the defendants are prevented from relying on the statute-of-limitations defense, the plaintiff's wrongful death claim is barred because it was filed more than two years after Hocker died.

That brings us to the plaintiff's contention that the doctrine of fraudulent concealment applies in this case to toll the medical malpractice statute of limitations. She cites our decision in *Koppes v. Pearson,* 384 N.W.2d 381 (Iowa 1986), where this court held the plaintiffs in a medical malpractice case would be permitted to prove fraudulent concealment to avoid the six-year limitation on medical malpractice claims. 384 N.W.2d at 388. In response, the defendants contend the doctrine of fraudulent concealment is restricted under the medical malpractice statute of limitations just like the discovery rule. They rely on our recent statement in *Schlote* that "[a] plaintiff in a medical malpractice case must show the defendant did some affirmative act to conceal the *injury* rather than the cause of action." *Schlote,* 676 N.W.2d at 195. Thus, the defendants argue, the plaintiff must show the defendants concealed her husband's death, a showing she cannot make. Upon a close examination of the underpinnings of the fraudulent concealment doctrine, it becomes apparent that the plaintiff has the better argument.

■ B. *Applicable principles of fraudulent concealment.* A review of our cases reveals two lines of authority concerning the legal effect of a tortfeasor's misrepresentations to an injured party that cause the injured party to file suit beyond the statutory period. Under one series of cases, the analysis rests on the doctrine of equitable estoppel. *See, e.g., Meier v. Alfa–Laval, Inc.,* 454 N.W.2d 576, 578–80 (Iowa 1990); *Beeck v. Aquaslide 'N' Dive Corp.,* 350 N.W.2d 149, 157 (Iowa 1984); *King v. Knudson,* 209 Iowa 1214, 1217, 229 N.W. 839, 841 (1930). These cases hold that equitable estoppel is a recognized defense to the application of the statute of limitations. *Meier,* 454 N.W.2d at 578; *Beeck,* 350 N.W.2d at 157. Equitable estoppel prevents a defendant "from asserting the bar of the statute of limitations" based on "his agreement, representations, or conduct." *DeWall v. Prentice,* 224 N.W.2d 428, 430 (Iowa 1974). "There must be conduct amounting to false representation or concealment, and a party relying thereon must be thereby misled into doing or failing to do something he would not otherwise have done or omitted." *Id.* (citation omitted); *accord Beeck,* 350 N.W.2d at 159 ("An estoppel may be based on fraudulent concealment." (citing *Gruener v. City of Cedar Falls,* 189 N.W.2d 577, 580 (Iowa 1971))).

Under another line of cases the doctrine of fraudulent concealment is discussed without reference to its equitable estoppel roots and has evolved into a concept more akin to, yet ostensibly distinct from, the discovery rule. *See, e.g., Van Overbeke v. Youberg,* 540 N.W.2d 273, 276 (Iowa 1995); *Koppes,* 384 N.W.2d at 386. The following statement of the rule in *Koppes* illustrates this point:

> "[W]here the party against whom a cause of action existed in favor of another, by fraud or actual fraudulent concealment prevented such other from obtaining knowledge thereof, the statute would only commence to run from the

time the right of action was discovered, or might, by the use of diligence, have been discovered."

*Koppes,* 384 N.W.2d at 386 (quoting *Dist. Township of Boomer v. French,* 40 Iowa 601, 603 (1875)). This expression of the fraudulent concealment doctrine combines principles of equitable estoppel (a party's fraud or fraudulent concealment prevents another from knowing he has a cause of action) with a form of discovery rule (the statute is tolled until the injured party discovers or by the exercise of diligence could have discovered the cause of action). The odd blending of these concepts is perhaps explained by the fact that the original articulation of the doctrine of fraudulent concealment predated this court's adoption of the discovery rule.

In any event, we think a more solid analytical framework is provided by confirming the doctrine of fraudulent concealment as a form of equitable estoppel. By adhering to this foundation for fraudulent concealment, the indispensable elements of this doctrine can be uniformly identified and consistently applied. Moreover, the distinctions between the defense of fraudulent concealment and the discovery rule become more apparent, thereby avoiding the confusion that arises from the hybridization of these concepts in some of our cases. Under this view, fraudulent concealment does not affect the running of the statutory limitations period; rather, it estops a defendant from raising a statute-of-limitations defense. *See* 51 Am.Jur.2d *Limitation of Actions* § 380, at 688 (2000).

■ Having identified the essential character of the fraudulent concealment doctrine, we think the resolution of the present dispute becomes clear. As this court noted in *Koppes, Schultze,* and

*Schlote,* section 614.1(9) was adopted by the legislature to restrict the breadth of the *discovery rule* in medical malpractice cases. *Schlote,* 676 N.W.2d at 194; *Schultze,* 463 N.W.2d at 50; *Koppes,* 384 N.W.2d at 387. Thus, neither the statute itself nor the legislature's underlying intent is pertinent to the fraudulent concealment doctrine when it is properly viewed as a species of equitable estoppel. That is because equitable estoppel has nothing to do with the running of the limitations period or the discovery rule; it simply precludes a defendant from asserting the statute as a defense when it would be inequitable to permit the defendant to do so. *See* 51 Am.Jur.2d *Limitation of Actions* § 399, at 705 ("Equitable estoppel bars a defendant from pleading the running of statute of limitations if the plaintiff is induced to refrain from bringing a timely action by the defendant's fraud, misrepresentation, or deception."). *See generally id.* § 381, at 689 (stating equitable tolling focuses on plaintiff's knowledge, whereas equitable estoppel focuses on the defendant's conduct). Based on the distinct and independent nature of the fraudulent concealment doctrine, we think this court was correct when it held in *Koppes* that "[c]laims fraudulently concealed from the patient were not targeted by [section 614.1(9)]." *Koppes,* 384 N.W.2d at 387.

■ The same reasoning leads us also to conclude that section 614.1(9) does not affect the showing required to successfully rely on the doctrine of fraudulent concealment. To put the same limitations on the fraudulent concealment doctrine that we are obligated by the language of section 614.1(9) to place on the discovery rule would ignore the "separate and distinct" character of the fraudulent concealment doctrine and the discovery rule.[1] *See Kop-*

---

1. Our decision in this case requires that we withdraw our dicta in *Schlote* that a plaintiff

relying on fraudulent concealment must show the defendant concealed the injury giving rise

*pes,* 384 N.W.2d at 387. *See generally* 51 Am.Jur.2d *Limitation of Actions* § 381, at 689.

■ In addition, we are convinced such limitations on the doctrine of fraudulent concealment would be inconsistent with the theory underlying this concept. This doctrine is intended to prevent a party from benefiting from "the protection of a limitations statute when by his own fraud he has prevented the other party from seeking redress within the period of limitations." *Borderlon v. Peck,* 661 S.W.2d 907, 909 (Tex.1983) (cited in *Koppes,* 384 N.W.2d at 387). It should not matter what particular fact is concealed so long as the defendant's conduct prevents the timely filing of the claim and the other prerequisites for equitable estoppel are established. We now consider whether the question of the defendants' fraudulent concealment is capable of summary adjudication in this case.

■ C. *Existence of genuine issue of material fact.* The foundational elements of equitable estoppel are well established:

> (1) The defendant has made a false representation or has concealed material facts; (2) the plaintiff lacks knowledge of the true facts; (3) the defendant intended the plaintiff to act upon such representations; and (4) the plaintiff did in fact rely upon such representations to his prejudice.

*Meier,* 454 N.W.2d at 578–79; *accord Beeck,* 350 N.W.2d at 158. With respect to the first element, a party relying on the doctrine of fraudulent concealment must prove the defendant did some affirmative act to conceal the plaintiff's cause of action independent of and subsequent to the liability-producing conduct. *See* 51 Am.

to the plaintiff's claim. 676 N.W.2d at 195. This action does not, however, undermine the

Jur.2d *Limitation of Actions* § 387, at 694–95. Furthermore, the plaintiff's reliance must be reasonable. *See Holman v. Omaha & C.B. Ry. & Bridge Co.,* 117 Iowa 268, 274, 90 N.W. 833, 834 (1902) (stating "estoppel would only be effective so long as the [plaintiff] reasonably relied upon defendant's representations as an excuse for not instituting the action"); 51 Am. Jur.2d *Limitation of Actions* § 384, at 691–92 ("The representation or conduct must have been relied upon reasonably, justifiably, and in good faith."). The circumstances justifying an estoppel end when "[the] plaintiff [becomes] aware of the fraud, or by the use of ordinary care and diligence should have discovered it." *Faust v. Hosford,* 119 Iowa 97, 100, 93 N.W. 58, 59 (1903). At that point the plaintiff must file suit "within a period of time not exceeding the original statutory period applicable to the particular cause of action." 51 Am.Jur.2d *Limitation of Actions* § 386, at 694. The plaintiff bears the burden to prove equitable estoppel by a clear and convincing preponderance of the evidence. *Meier,* 454 N.W.2d at 578.

■ Turning to the present case, we note the plaintiff makes no claim of misrepresentation or concealment by the hospital. Therefore, the plaintiff cannot rely on the fraudulent concealment doctrine to avoid the bar of the two-year statute of limitations as to this defendant. Accordingly, the district court correctly ruled as a matter of law that the plaintiff's wrongful death claim and loss-of-spousal-consortium claim against the hospital were untimely filed and should be dismissed.

■ As for the remaining defendants, the parties make no attempt to distinguish Koontz P.C., Dr. Miulli's employer, from Dr. Miulli. Koontz P.C. has not argued

continuing validity of the balance of our opinion in *Schlote.*

that it should not be bound by the alleged misrepresentations made by Dr. Miulli. Therefore, we treat Koontz P.C. and Dr. Miulli together for purposes of considering whether summary judgment was appropriate on the wrongful death claim.

■ Dr. Miulli does not dispute there is sufficient evidence in the record upon which reasonable minds might conclude he made affirmative misrepresentations concerning the circumstances and cause of Hocker's death that prevented Christy from discovering information that would have prompted her to file a wrongful death claim. He claims instead that Christy was put on inquiry notice more than two years prior to her commencement of this action when she received the Mayo Clinic report that did not mention viral encephalitis.[2] He asserts she would have discovered her cause of action then if she had exercised due diligence.

To support his argument, Dr. Miulli primarily relies on our now-disavowed cases that include the discovery rule in the definition of fraudulent concealment. He uses this language to incorporate the concept of inquiry notice into the fraudulent concealment doctrine. As we have now made clear, however, the discovery rule and inquiry notice are distinct from the doctrine of fraudulent concealment and the plaintiff's duty to exercise diligence to discover the defendant's concealment. *See Schultze*, 463 N.W.2d at 51 (*"in the absence of fraud* the two-year statutory period provided sufficient time to examine medical records and ascertain facts regarding the cause of death to determine if defendants committed any acts of malpractice" (emphasis added)). An illustration

will show that the mere existence of inquiry notice does not necessarily suspend the estoppel produced by a defendant's fraudulent concealment. For example, if a patient on inquiry notice investigates by asking questions of his physician, who then misrepresents the facts that would give rise to a cause of action, the physician is in no position to subsequently fault the patient who reasonably relies on the truth of the physician's statements and as a consequence delays filing suit. *See Faust*, 119 Iowa at 101, 93 N.W. at 59 (stating plaintiff "had the right to rely on the statements of her trusted agent"); 51 Am. Jur.2d *Limitation of Actions* § 390, at 697 (stating fiduciary relationship may excuse plaintiff's failure to inquire or investigate "because of his or her trust and confidence in the fiduciary"). On the other hand, a patient's knowledge of pertinent facts and circumstances may affect the reasonableness of his continued reliance on a tortfeasor's representations. *See* 51 Am.Jur.2d *Limitation of Actions* § 382, at 690.

We think there is a genuine issue of material fact in the present case as to whether Christy had knowledge of facts and circumstances more than two years prior to filing suit that put her on notice of Dr. Miulli's alleged fraud or that made her continued reliance on Dr. Miulli's representations unreasonable. Although the Mayo Clinic report Christy received in the spring of 1999 did not mention viral encephalitis, there is evidence from which a jury could conclude that the absence of any discussion of viral encephalitis in that report was not necessarily an indication that Hocker did not suffer from that condition at the time of his death so as to alert

---

**2.** A person is on inquiry notice for purposes of the discovery rule when "he gains information sufficient to alert a reasonable person of the need to investigate." *Ranney v. Parawax Co.*, 582 N.W.2d 152, 154 (Iowa 1998). Once a person has inquiry notice, he is held to have knowledge "of all facts that would have been disclosed by a reasonably diligent investigation." *Id.*

Christy that the defendant may have deceived her. Moreover, there is evidence Dr. Miulli actively continued his concealment after Christy received the pathology report. Christy testified Dr. Miulli assured her in the summer of 1999 that the board investigation was instigated by a competitor, thereby implying there was no merit to the complaint. She said he also told her at that time that he had seen additional cases of viral infections in patients with brain tumors. We have held that fraudulent concealment can be established by proof the "defendant not only affirmatively misrepresented the [pertinent facts], but made statements calculated to throw [the] plaintiff off her guard, and to cause her to abstain from making inquiries." *Faust*, 119 Iowa at 99–100, 93 N.W. at 58. A fact finder could conclude Dr. Miulli's statements to Christy in the summer of 1999 were intended to do just that: dispel any suspicions that would have led the plaintiff to investigate her husband's death. A fact finder might also reasonably conclude Christy had no reason to make further inquiries until she received additional information in the summer of 2001 directly contradicting what Dr. Miulli had told her.

We conclude the district court erred in granting summary judgment to Dr. Miulli on his statute-of-limitations defense. Although the district court correctly ruled the two-year limitations period had expired as a matter of law by the time Christy filed suit, Christy has generated a genuine issue of material fact as to whether Dr. Miulli is estopped by his acts of concealment from raising this affirmative defense.

Accordingly, we reverse the summary judgment granted to Dr. Miulli and Koontz P.C. on the plaintiff's claims for wrongful death and loss of spousal consortium.

### IV. Loss–of–Parental–Consortium Claims.

We now consider whether the district court correctly dismissed the children's loss-of-consortium claims. The court applied section 614.1(9)(*a*), quoted above, rather than section 614.1(9)(*b*), which provides:

> An action subject to paragraph "*a*" and brought on behalf of a minor who was under the age of eight years when the act, omission, or occurrence alleged in the action occurred shall be commenced no later than the minor's tenth birthday or as provided in paragraph "*a*", whichever is later.

Iowa Code § 614.1(9)(*b*). The undisputed facts establish that the decedent's three minor children were under the age of eight years at the time of their father's biopsy and were under the age of ten years at the time this suit was filed. Therefore, if paragraph (*b*) governs, their claims for loss of consortium are timely as a matter of law.

The defendants contend, however, that paragraph (*b*) applies only when the minor suffered personal injuries from the alleged malpractice. When, as here, the defendants argue, the claim is one for loss of consortium brought by the executor of the decedent's estate, paragraph (*a*) governs.[3] The plaintiff disagrees with this

---

**3.** Under Iowa case law, a minor's loss-of-parental consortium claim must be brought by the administrator or executor of a deceased parent's estate. *Madison v. Colby*, 348 N.W.2d 202, 209 (Iowa 1984). Here, the minors' claims were brought by Christy as "next friend and parent." The defendants argue that we should analyze the minors' claims as though they had been brought by the proper party, asserting the minors should obtain no advantage with respect to the applicable statute of limitations by virtue of Christy's failure to bring their claims in her capacity as executor of Hocker's estate. We

interpretation of section 614.1(9) and suggests as an alternative that section 614.8(2) applies to extend the limitations period for one year from the minor's attainment of majority. *See* Iowa Code § 614.8(2). We address the latter issue first.

 Section 614.8(2) provides:

*Except as provided in section 614.1, subsection 9,* the times limited for actions in this chapter, except those brought for penalties and forfeitures, are extended in favor of minors, so that they shall have one year from and after attainment of majority within which to commence an action.

Iowa Code § 614.8(2) (emphasis added). The language, "[e]xcept as provided in section 614.1, subsection 9," first appeared in section 614.8 in 1997 at the same time the legislature added paragraph (*b* ) to section 614.1(9). 1997 Iowa Acts ch. 197, §§ 6–7. It is apparent the legislature intended that medical malpractice actions brought on behalf of a minor be governed by section 614.1(9), not section 614.8. Because section 614.8 does not apply to the present case, we direct our attention to section 614.1(9).

 As noted above, the defendants claim paragraph (*b* ) of section 614.1(9) applies only when the minor was the patient who received the allegedly negligent care. This argument finds no support in the language of the statute, which encompasses medical malpractice actions "brought on behalf of a minor" with no qualifications or exceptions. " 'If the statutory language is plain 'and the meaning clear, we do not search for legislative intent beyond the express terms of the statute.' " *Am. Legion v. Cedar Rapids Bd. of Review,* 646 N.W.2d 433, 437 (Iowa 2002) (citation omitted). Therefore, a claim brought by an executor or administrator on behalf of the minor for loss-of-consortium damages falls within the scope of the statute.[4]

 The defendants contend, however, that our "feasible joinder" rule requires that a minor's loss-of-consortium claim be governed by the same limitations period applicable to the injured or deceased parent's claim. The "feasible joinder" principle requires that consortium claims be brought with the primary injury or death claim unless the plaintiff can show it was not feasible for the consortium claim to be joined with the primary claim. *See Beeck v. S.R. Smith Co.,* 359 N.W.2d 482, 486 (Iowa 1984). This rule is not based on the idea that the executor or administrator of the deceased parent's estate owns the cause of action. *See id.* Indeed, our cases make clear that a loss-of-parental-consortium claim is independent of the wrongful death claim and belongs to the child. *See In re Estate of Sylvester,* 559 N.W.2d 285, 288 (Iowa 1997); *Bloomquist v. Wapello County,* 500 N.W.2d 1, 8 (Iowa 1993). The joinder rule is simply designed "to reduce a multiplicity

agree, and so our analysis assumes that the loss-of-parental-consortium claims are brought by the executor of the deceased parent's estate.

4. The defendant argues that interpreting the section 614.1(9)(*b* ) to include claims brought by administrators or executors would lead to the absurd result that there would be no statute of limitations applicable to a deceased minor's claim because the deceased minor would never have a tenth birthday so as to terminate the limitations period. But it is this precise situation that has led courts in other states to hold that a limitations statute such as section 614.1(9)(*b* ) applies only to living children. *See Randolph v. Methodist Hosps., Inc.,* 793 N.E.2d 231, 234 (Ind.Ct.App.2003); *Awve v. Physicians Ins. Co. of Wis., Inc.,* 181 Wis.2d 815, 512 N.W.2d 216, 219 (Wis.Ct.App.1994); *cf. Holt v. Lenko,* 791 A.2d 1212, 1215 (Pa.Super.Ct.2002) (employing same reasoning to conclude general tolling provision for minors applied only to living minors).

of suits and the possibility of double recovery." *S.R. Smith*, 359 N.W.2d at 487. Moreover, this court has specifically refused to make joinder mandatory. *See Madison v. Colby*, 348 N.W.2d 202, 209 (Iowa 1984).

Based on these principles, we held in *S.R. Smith* that a child's claim for loss of parental consortium is governed by the statute of limitations applicable to minors, even though the claim should be brought by the injured parent when feasible. 359 N.W.2d at 487. We think the same result is appropriate in a wrongful death case. The child is entitled to any recovery obtained by the executor on the child's behalf, and the executor is merely the conduit for achieving that recovery. The child's claim should be governed by the statute of limitations applicable to minors. Here, that statute is paragraph (*b*) of section 614.1(9).

Although this holding may result in a child's claim being prosecuted independently if the wrongful death claim is already barred under paragraph (*a*) of section 614.1(9), we do not think this situation violates the feasible joinder rule, literally or in spirit. Joinder is not required when it is not feasible. Clearly, if the underlying claim for injury or death is barred by the statute of limitations, then it would not be feasible to join a viable loss-of-consortium claim with the underlying claim. *Cf. In re Marriage of Hutchinson*, 588 N.W.2d 442, 450 (Iowa 1999) (holding joinder of child's loss-of-parental-consortium claim was not feasible where injured parent refused to sue her doctors). Furthermore, there is no possibility of a multiplicity of suits or double recovery when the wrongful death claim has not been and cannot be pursued.

In conclusion, we hold section 614.1(9)(*b*) applies to the loss-of-consortium claims filed by Christy on behalf of the decedent's minor children. The district court erred in ruling their claims were barred by the statute of limitations set forth in section 614.1(9)(*a*).

## V. *Summary and Disposition.*

The two-year statute of limitations applicable to the plaintiff's wrongful death claim and loss-of-spousal-consortium claim—section 614.1(9)(*a*)—began to run on the date the plaintiff knew of her husband's death, and consequently these claims were barred by the time the present action was filed three years later. Nonetheless, if Christy can establish the elements of equitable estoppel based on Dr. Miulli's fraudulent concealment, she can prevent him from relying on the statute as an affirmative defense. Because there are no facts that would support a finding of misrepresentation or concealment by the hospital, we affirm the summary judgment in favor of the hospital on the wrongful death and loss-of-spousal-consortium claims. Because there are genuine issues of material fact as to the plaintiff's allegations of fraudulent concealment by Dr. Miulli, we reverse the district court's summary judgment ruling in favor of Dr. Miulli and Koontz P.C. on these claims.

The minors' loss-of-parental-consortium claims are governed by the statute of limitations contained in section 614.1(9)(*b*). The undisputed facts establish that these claims were timely filed. The district court erred in ruling otherwise. Therefore, we reverse the district court's summary judgment ruling in favor of the defendants on the loss-of-parental-consortium claims.

We remand this case for further proceedings.

AFFIRMED IN PART AND RE-
VERSED IN PART; CASE REMAND-
ED FOR FURTHER PROCEEDINGS.