# IN THE SUPREME COURT OF IOWA

No. 11–0657

Filed July 13, 2012

**THE ESTATE OF ERIKA L. HERREN ANDERSON,**
by and through its Duly Appointed Administrator,
Todd Herren; and **TODD HERREN,** Individually
and as Next Best Friend and Natural Father of
Ryan Herren, a Minor, and Brynn Herren, a Minor,

      Appellants,

vs.

**IOWA DERMATOLOGY CLINIC, PLC,** a Corporation;
**CHARLES W. LOVE**, an Individual; and PATHOLOGY
LABORATORY, P.C., a Corporation n/k/a
**IOWA PATHOLOGY ASSOCIATES, P.C.**, a Corporation,

      Appellees.

---

Appeal from the Iowa District Court for Polk County, Richard G. Blane II, Judge.

Plaintiffs appeal from district court's granting of defendants' motions for summary judgment, contending the statute of repose should not bar their claims of medical negligence. **AFFIRMED.**

Marc A. Humphrey of Humphrey Law Firm, P.C., Des Moines, and Alan O. Olson of Olson Law Office, P.C., Des Moines, for appellants.

Michael W. Ellwanger and Robert N. Stewart of Rawlings, Nieland, Killinger, Ellwanger, Jacobs, Mohrhauser & Nelson, L.L.P., Sioux City, for appellee Iowa Pathology Associates.

Steven K. Scharnberg and Eric G. Hoch of Finley, Alt, Smith, Scharnberg, Craig, Hilmes & Gaffney, P.C., Des Moines, for appellees Iowa Dermatology Clinic and Charles W. Love, M.D.

**HECHT, Justice.**

In this case, we are asked to review a summary judgment ruling dismissing a wrongful death action because it was commenced later than is allowed under Iowa Code section 614.1(9) (2011), a statute of repose limiting the time allowed for commencing medical negligence cases. The plaintiffs contend their case should not have been dismissed because the defendants fraudulently concealed the fact that a tissue specimen harvested from the plaintiffs' decedent more than six years before the filing of this action was not evaluated by a board-certified pathologist. In the alternative, the plaintiffs contend the continuum-of-negligent-treatment doctrine precludes the summary dismissal of this case notwithstanding the statute of repose. For the reasons expressed below, we affirm the district court's grant of summary judgment.

## I. Factual and Procedural Background.

When viewed most favorably to the plaintiffs, the summary judgment record would support the following findings of fact. In September 1996, Erika Herren Anderson sought care from Dr. Charles Love, a dermatologist employed by Iowa Dermatology Clinic, PLC, for the treatment of various moles and skin lesions. Erika was first examined by Dr. Love on September 18, 1996, when she presented for examination of moles on the left side of her neck and her left mid-back region. Erika had certain risk factors for melanoma, including her fair skin and the presence of numerous moles. On that occasion, Dr. Love performed an excisional biopsy of the mole on the left side of Erika's neck and sent a tissue sample to Iowa Pathology Associates for evaluation. Dr. Richard Scupham, a board-certified pathologist practicing in the specialty of dermatopathology at Iowa Pathology Associates, evaluated the specimen

as "irritated, fibrotic epithelioid cell nevus." Dr. Love interpreted Dr. Scupham's report as indicating the tissue sample evidenced benign mole tissue.

When Erika returned to Dr. Love's office on January 2 and February 15, 1997, Dr. Love's examination revealed that pigmentation had returned to the biopsied area. Dr. Love treated the area with liquid nitrogen to freeze the tissue and remove the coloration. Erica returned to Dr. Love's office on June 3, 1997; July 8, 1997; and January 27, 1998, each time complaining that the brown pigmentation had returned. Each time, Dr. Love examined the area and applied liquid nitrogen.

As the pigmentation in the residual tissue had not been permanently eliminated from the biopsy site by the five previous liquid nitrogen treatments, Dr. Love took another tissue specimen on February 28, 1998. Dr. Love sent this specimen to Iowa Pathology Associates, but not for evaluation. Instead, Iowa Pathology Associates mounted the specimen on a slide and returned it to Dr. Love for his analysis. Dr. Love concluded this specimen, like the earlier one, was noncancerous. It was thereafter inadvertently destroyed.

Dr. Love took additional tissue specimens from the same area of Erika's neck on September 4, 1998; April 1, 1999; April 9, 1999; and April 15, 1999, and sent them to Iowa Pathology Associates for evaluation. Upon evaluation of the April 1 tissue sample, Dr. Scupham observed "mitotic figures"[1] in the dermal component of the specimen.

---

[1]Dr. Scupham explained in his deposition testimony that "mitotic figures are a histologic correlate to proliferative activity of the cells." In order for cells to divide, they undergo mitosis. Dr. Scupham's concern about the April 1 and April 9 tissue specimens was based on his belief that mitotic figures are uncommon in ordinary benign-acquired mole tissue, and the lesion from which the sample had been extracted was recurrent and could be melanoma.

This finding caused Dr. Scupham to have heightened concern about the possibility of cancer. Given this finding, Dr. Scupham recommended the complete excision of the lesion. Dr. Scupham's evaluation of the April 9 specimen again noted the presence of tissue that caused him concern, and his pathology report to Dr. Love again recommended further excision of the lesion. This was undertaken by Dr. Love on April 15, 1999. Dr. Scupham found no nevomelanocytic or other atypical cells present in the April 15 specimen and reported as much to Dr. Love.

Erika continued to consult Dr. Love for her dermatological concerns after April 15, 1999. Dr. Love harvested additional tissue specimens from parts of Erika's body other than her neck on September 26, 2000; September 10, 2002; March 15, 2004; June 14, 2006; and September 6, 2007.[2] Dr. Love did not send these specimens outside his office for evaluation by a pathologist and instead evaluated them himself as benign skin abnormalities of noncancerous origin. On the occasions of each of these examinations from September 26, 2000, through June 14, 2006, Dr. Love examined the left side of Erika's neck from which the previous biopsy specimens had been harvested.

Erika discovered a lump on her chin in March 2008, and she consulted an ear, nose, and throat physician at the Iowa Clinic. The lump was ultimately removed and evaluated by a pathologist. The pathologist diagnosed Erika with melanoma on August 19, 2008. Following the diagnosis, pathologists evaluated each of the tissue samples previously examined by Dr. Scupham. The evaluations revealed each of

---

[2]Dr. Love examined and treated Erika on April 23, 1999; July 19, 1999; August 24, 1999; October 2, 1999; November 9, 1999; September 26, 2000; September 10, 2002; March 15, 2004; September 15, 2004; June 14, 2006; and September 6, 2007.

the specimens harvested by Dr. Love on September 18, 1996; April 1, 1999; and April 9, 1999, contained microscopic evidence supporting a diagnosis of melanoma. The plaintiffs' experts further opined the February 28, 1998 specimen evaluated by Dr. Love before it was inadvertently destroyed also would have shown microscopic evidence of the presence of melanoma consistent with specimens taken before and after that date.

The cancer ultimately took Erika's life in November 2009. The plaintiffs—Erika's estate, her husband, and her children—brought this medical malpractice action on August 11, 2010. The plaintiffs' petition alleged multiple specifications of negligence against Dr. Love, Iowa Dermatology Clinic, and Iowa Pathology Associates.

Dr. Love and Iowa Dermatology Clinic filed a motion for partial summary judgment, and Iowa Pathology Associates filed a motion for summary judgment. The motion of Dr. Love and Iowa Dermatology Clinic asserted the statute of repose barred the plaintiffs' claims of negligence arising out of conduct occurring more than six years before the filing of the petition on August 11, 2010. The motion filed by Iowa Pathology Associates claimed entitlement to summary judgment as to the entirety of the plaintiffs' claims because it provided no medical services or treatment during the six years prior to the commencement of this action.

The plaintiffs resisted the motions, asserting the defendants were equitably estopped from asserting the statute of repose as a defense under the doctrine of fraudulent concealment. The plaintiffs asserted Erika and her husband had a right to know a pathologist did not evaluate the February 28, 1998 slide and that the defendants concealed this material fact. The plaintiffs also urged the district court to overrule the

defendants' motions pursuant to the continuum-of-negligent-care doctrine.

The district court granted the motions for summary judgment. The court rejected the plaintiffs' fraudulent-concealment argument because, in its view, the summary judgment record did not contain evidence tending to prove the defendants failed to disclose to Erika that the February 28, 1998 tissue sample was not evaluated by a pathologist. The court further concluded the defendants did not have a duty to inform Erika that the slide was being evaluated by a dermatologist rather than a pathologist. The court also rejected the plaintiffs' argument that the continuum-of-negligent-treatment doctrine precluded summary judgment in favor of Dr. Love and Iowa Dermatology Clinic, PLC. The district court declined to apply the doctrine, reasoning that it would be "more prudent and judicially economical" for the question to be answered by this court on appeal. The district court then revealed that if the doctrine were recognized under Iowa law the court would hold it inapplicable in this instance because (1) the doctrine tolled only statutes of limitation, not statutes of repose; and (2) the undisputed facts in the summary judgment record reveal there was no continuing and unbroken course of negligent treatment by any defendant.

## II. Standard of Review.

Summary judgment is appropriate

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Iowa R. Civ. P. 1.981(3); *Christy v. Miulli*, 692 N.W.2d 694, 699 (Iowa 2005). A fact question exists "if reasonable minds can differ on how the

issue should be resolved." *Walker v. Gribble*, 689 N.W.2d 104, 108 (Iowa 2004). The district court's ruling on a motion for summary judgment is reviewed for correction of errors of law. *Christy*, 692 N.W.2d at 699.

**III. Discussion.**

The issues before us on appeal revolve around Iowa's statute of repose for medical malpractice claims.

> [I]n no event shall any action be brought more than six years after the date on which occurred the act or omission or occurrence alleged in the action to have been the cause of the injury or death unless a foreign object unintentionally left in the body caused the injury or death.

Iowa Code § 614.1(9)(*a*). Unlike the statute of limitations, under which a claim accrues for injuries caused by medical negligence when the plaintiff knew, or through the use of reasonable diligence should have known, of the injury, a statute of repose runs from the occurrence of the act causing the injury. *Albrecht v. Gen. Motors Corp.*, 648 N.W.2d 87, 92 (Iowa 2002). Because the period of repose begins running when the injury-causing act occurs, the statute of repose can in some cases prevent a claim for medical negligence from arising before the patient even knows or should know she has been injured. *Id.*; *Bob McKiness Excavating & Grading, Inc. v. Morton Bldgs., Inc.*, 507 N.W.2d 405, 408 (Iowa 1993). In the case before us, the plaintiffs seek to avoid the statute of repose under two theories: the doctrine of fraudulent concealment and the continuum-of-negligent-treatment doctrine.

**A. Fraudulent-Concealment Doctrine.** The common law doctrine of fraudulent concealment became a part of Iowa jurisprudence over a century ago in *District Township of Boomer v. French*, 40 Iowa 601, 603–04 (1875). The doctrine developed to "prevent a party from benefiting from 'the protection of a limitations statute when by his own fraud he has

prevented the other party from seeking redress within the period of limitations.' " *Christy*, 692 N.W.2d at 702 (quoting *Borderlon v. Peck*, 661 S.W.2d 907, 909 (Tex. 1983)). The doctrine is a form of equitable estoppel that estops a party from raising a statute of limitations defense in certain circumstances. *Id.* at 701. We previously held that the "venerable" doctrine survived codification of the statute of repose found in Iowa Code section 614.1(9). *Koppes v. Pearson*, 384 N.W.2d 381, 387 (Iowa 1986), *abrogated on other grounds by Christy*, 692 N.W.2d at 701. Consequently, if proven, a party's fraudulent concealment allows a plaintiff to pursue a claim that would be otherwise time barred under the statute of repose. *See Koppes*, 384 N.W.2d at 386.

A party seeking shelter under the doctrine of fraudulent concealment must plead and prove the following:

> (1) The defendant has made a false representation or has concealed material facts; (2) the plaintiff lacks knowledge of the true facts; (3) the defendant intended the plaintiff to act upon such representations; and (4) the plaintiff did in fact rely upon such representations to his prejudice.

*Christy*, 692 N.W.2d at 702 (citation and internal quotation marks omitted). The party alleging fraudulent concealment must prove each of the elements by "a clear and convincing preponderance of the evidence." *Id.*

Ordinarily, the plaintiff must prove the defendant engaged in affirmative conduct to conceal the plaintiff's cause of action. *Id.*; *Koppes*, 384 N.W.2d at 386. The affirmative conduct of concealment must be independent of and subsequent to the liability-producing conduct. *Christy*, 692 N.W.2d at 702. However, our caselaw recognizes an exception that relaxes the requirement of affirmative concealment when a fiduciary or confidential relationship exists between the party concealing

the cause of action and the party claiming fraudulent concealment. *Koppes,* 384 N.W.2d at 386; *see also Schlote v. Dawson,* 676 N.W.2d 187, 195 (Iowa 2004); *Langner v. Simpson,* 533 N.W.2d 511, 522 (Iowa 1995). "The close relationship of trust and confidence between patient and physician gives rise to duties of disclosure which may obviate the need for a patient to prove an affirmative act of concealment." *Koppes,* 384 N.W.2d at 386.

The plaintiffs contend Dr. Love should have explained to Erika that he was interpreting the February 28, 1998 slide himself rather than having it examined by a board-certified pathologist. The plaintiffs contend a board-certified pathologist is the "best qualified person" to interpret such specimens and that had Erika been informed that the specimen would not be evaluated by a pathologist she would have insisted that this be done. The plaintiffs further contend the fraudulent concealment of this information by Dr. Love also precludes Iowa Pathology Associates' reliance on the statute of repose because it participated in the "collective care" of Erika during the relevant time periods.

We conclude, as did the district court, that the plaintiffs' resistances failed to produce admissible evidence tending to prove Erika was not informed that Dr. Love evaluated that specimen. Dr. Love's uncontroverted deposition testimony indicated that it was his common practice to inform his patients whether he would evaluate their biopsy specimens himself or whether he was going to send the slide to a pathologist for evaluation.

> Q. Did you ever have any discussions with Erika wherein you advised her that you were not sending tissue specimens out to a pathology lab for evaluation, but instead

that you were evaluating them in-house? A. Yes. That is my customary practice.

Q. Tell me about that. What would you have said to her? A. I would have said that "I will check this biopsy for you personally," and if I were going to send it to the pathology lab, I would say "I will have our pathologist check this for you."

Q. Okay, so it's your testimony that both Erika and Todd—Was Todd ever present when you saw her? A. At this time, I don't recall that he ever was present during a visit.

Q. Okay. But it's your testimony that at least Erika would have been aware of the distinction between you interpreting slides versus the pathologist at Pathology Labs, P.C. interpreting her slides? A. That's correct . . . .

Further, Dr. Love testified that he regularly charges his patients an additional fee when he interprets the slides in-house.

The plaintiffs have offered no admissible evidence to rebut the testimony of Dr. Love that he informed Erika that it was he who would evaluate her tissue specimen from the February 28, 1998 biopsy. Although Erika's husband averred in an affidavit that Dr. Love never told him or Erika that not all of the slides would be interpreted by a board-certified pathologist, he does not allege he was present with Erika during any of her appointments with Dr. Love or that Dr. Love communicated separately with him on any occasion. The plaintiffs do not contend Dr. Love had a separate obligation to inform Erika's husband as to the identity or qualifications of the person who evaluated the specimen in question. The plaintiffs have also not offered any evidence to rebut Dr. Love's claim that Erika would have received notice that he evaluated that tissue specimen and others through bills for the service from his office during the course of treatment. Accordingly, with only the testimony of Erika's husband, which amounts to mere speculation that Erika was not informed that Dr. Love performed the evaluation of the February 28, 1998 specimen, we conclude the plaintiffs have not

engendered a fact question on whether Dr. Love concealed the fact that he, rather than a pathologist, evaluated the slide.

The plaintiffs further assert that, even if Dr. Love told Erika that he would personally evaluate the February 28, 1998 tissue specimen, he did not explain to her the differences in qualifications and training between himself and a board-certified pathologist. The plaintiffs contend this constituted a failure to disclose a material fact because, had Erika known the difference in qualifications, she would have insisted a pathologist review the slide. The plaintiffs argue we should apply an informed consent analysis to this determination—that a physician's failure to disclose a material risk in the context of informed consent constitutes a concealment of a material fact that justifies application of the fraudulent-concealment doctrine in this case.

Under the informed consent doctrine, a physician must disclose information material to a patient's decision to consent to medical treatment. *Pauscher v. Iowa Methodist Med. Ctr.*, 408 N.W.2d 355, 360 (Iowa 1987). In *Pauscher*, this court endorsed the "patient rule" in determining the scope of a physician's duty to disclose information before a procedure or treatment begins. *Id.* at 359. Under the "patient rule," the physician's duty to disclose is "measured by the patient's need to have access to all information material to making a truly informed and intelligent decision concerning the proposed medical procedure." *Id.* Specifically, the plaintiff must show that "[d]isclosure of the risk would have led a reasonable patient in plaintiff's position to reject the medical procedure or choose a different course of treatment." *Id.* at 360.

Even assuming without deciding this test for materiality is applied to the determination of whether a material fact has been withheld from

the patient for fraudulent concealment purposes, we do not conclude the plaintiffs have generated a genuine issue of material fact on this issue. Although Erika's husband averred that had Erika known some of her slides were being interpreted by a dermatologist rather than a pathologist he believes Erika would have insisted on having the slides interpreted by a pathologist or sought care elsewhere, our informed consent caselaw provides that

> the patient ordinarily will be required to present expert testimony relating to the nature of the risk and the likelihood of its occurrence, in order for the jury to determine, from the standpoint of the reasonable patient, whether the risk is in fact a material one.

*Id.* at 360. On this issue, the plaintiffs have offered only the affidavit of Dr. Trueblood averring that "board certified pathologists . . . have superior training . . . to recognize cellular abnormalities, including melanoma, under a microscope than do dermatologists." Importantly, Dr. Trueblood's affidavit did not address the nature of the risk arising from Dr. Love's evaluation of the February 28, 1998 biopsy slide or the likelihood of its occurrence. The importance of such expert opinion testimony at the summary judgment juncture in this case is heightened by the deposition testimony of Dr. Scupham who testified that approximately fifty percent of dermatologists evaluate biopsy slides themselves without the aid of a pathologist. Dr. Scupham further testified that, although pathologists have more formal training than dermatologists in diagnosing skin lesions, dermatologists derive "powerful" informal training and education in the course of their clinical practice aiding them in their diagnoses. We therefore conclude the evidence in the summary judgment record is insufficient to raise a genuine issue of material fact as to whether Dr. Love's failure to disclose

the difference in qualifications between himself and a pathologist was a failure to disclose a material fact for purposes of our application of the fraudulent-concealment doctrine.

Accordingly, we affirm the district court's grant of summary judgment on this issue.

**B. Continuum-of-Negligent-Treatment Doctrine.** The plaintiffs argue that a continuing course of negligent medical care tolls the statute of repose found in Iowa Code section 614.1(9) until the last instance of negligent treatment. In *Langner*, we stated that, if the doctrine applies, the statute of limitations begins to run on the last date of negligent treatment. 533 N.W.2d at 522. Although in *Langner* we entertained the plaintiff's argument under the continuum-of-negligent-treatment doctrine, we did not explicitly endorse the doctrine because we concluded it did not apply to the facts of the case. *Id.* at 519.

The defendants urge us to reject the application of the continuum-of-negligent-treatment doctrine to the statute of repose, and in the alternative, if we conclude it does apply, the defendants contend the plaintiffs have failed to establish genuine issues of material fact on the elements of the doctrine.

We begin by clarifying that the plaintiffs have not argued for the application of the doctrine of continuous treatment but instead have asserted only the application of the continuum-of-*negligent*-treatment doctrine. The two doctrines are distinguishable. Under the continuing-treatment doctrine,

> if the treatment by the doctor is a continuing course and the patient's disease or condition is of such a nature as to impose on the doctor a duty of continuing treatment and care, the statute does not commence running until treatment by the [doctor] for the particular disease or condition involved has terminated.

*Ratcliff v. Graether*, 697 N.W.2d 119, 124–25 (Iowa 2005) (citation and internal quotation marks omitted). In contrast, under the continuum-of-negligent-treatment doctrine, a plaintiff must establish "(1) that there was a continuous and unbroken course of *negligent* treatment, and (2) that the treatment was so related as to constitute one continuing wrong." *Langner*, 533 N.W.2d at 522 (emphasis added) (citation and internal quotation marks omitted).

Dr. Love treated Erika on three occasions within the six-year statute of repose: September 15, 2004; June 14, 2006; and September 6, 2007. The motion for partial summary judgment filed by Dr. Love and Iowa Dermatology requested summary judgment for claims based on Dr. Love's conduct prior to September 15, 2004. We therefore address whether a genuine issue of material fact was engendered in the summary judgment record as to whether Dr. Love's care and treatment of Erika before that date constituted "a continuous and unbroken course of negligent treatment" that extended into the period of repose and whether "the treatment was so related as to constitute one continuing wrong." *See Langer*, 533 N.W.2d at 522.

The plaintiffs' petition alleged Dr. Love and Iowa Dermatology were "negligent and failed to comply with accepted standards of dermatological practice" from September 18, 1996, through September 6, 2007. The plaintiffs further alleged that Dr. Love negligently failed to diagnose and treat the melanoma in Erika's body, failed to have a qualified pathologist evaluate all of Erika's tissue samples, and otherwise failed to exercise the appropriate standard of care in his care and treatment of Erika.

We believe the plaintiffs have engendered a fact question on whether there was continuous treatment by Dr. Love of the site of the

melanoma on Erika's neck within the statute of repose. Specifically, the summary judgment record indicates, in the medical records and testimony of Dr. Love himself, that Dr. Love inspected Erika's neck and the site of the excised lesion twice in 2004, once in 2006, and once in 2007. Although some of these examinations were also directed at moles or lesions on other parts of Erika's body, the record clearly raises a fact question that he regularly examined the side of Erika's neck during the repose period.

However, we cannot conclude the record engenders a fact question on whether the care that continued into the period of repose constituted negligent care, even assuming without deciding that continuing negligent care would overcome the statute of repose. The summary judgment record contains no evidence that any of the treatment provided by the defendants after April 15, 1999, fell below the applicable standard of care. Put another way, the plaintiffs have failed to provide any evidence that the applicable standard of care required defendants to do something after that date that they failed to do under the circumstances. Although the record does include evidence tending to support a finding that melanoma was detectable in the tissue samples removed from Erika's neck in 1996 through 1999, we find no expert testimony in this record establishing that, under the applicable standard of care, the defendants should have undertaken other diagnostic procedures or treatment modalities after April 15, 1999, under the circumstances of this case. Notably, Dr. Trueblood's affidavit did not address the standard of care required of Dr. Love after April 15, 1999, in his care and treatment of Erika, given the fact that the pathologist's report upon which he relied for the evaluation of the biopsy taken on that date was not positive for

melanoma, nor did the affidavit state in what particulars Dr. Love's conduct after that date fell below that standard.[3] The summary judgment record is similarly devoid of evidence establishing the standard of care against which the conduct of Iowa Pathology Associates, P.C. should be measured by a fact finder during the six years prior to August 11, 2010, when this defendant had no occasion to examine, evaluate tissue samples, or otherwise treat Erika. Although there is clearly a fact question as to whether the defendants were negligent in their care and treatment of Erika on and before April 15, 1999, the continuum-of-negligent-treatment doctrine requires proof that the defendants were negligent in some particular *after* that date and within the period of repose. *See, e.g., Jones v. Dettro*, 720 N.E.2d 343, 346–47 (Ill. App. Ct. 1999) (concluding plaintiff ordinarily must provide expert testimony to establish a continuous course of negligent treatment in order to avoid application of statute of repose); *Baker v. Farrand*, 26 A.3d 806, 814–15, 817 (Me. 2011) (adopting doctrine to delay running of statute of limitations and concluding summary judgment improper when plaintiff presented expert testimony that plaintiff suffered harm from negligent acts occurring within the limitations period); *Farley v. Goode*, 252 S.E.2d 594, 599 (Va. 1979) (doctrine applied in denying summary judgment when expert testimony in the record engendered fact question as to whether defendant breached the applicable standard of care during the period of repose); *Caughell v. Group Health Co-op of Puget Sound*, 876

---

[3]The plaintiffs argue on appeal that Dr. Love should have been palpating Erika's lymph nodes each time she returned to see him, should have instructed Erika how to palpate her own lymph nodes, and should have conducted further tests to check for metastasis. However, the summary judgment record contains no evidence tending to support this argument.

P.2d 898, 907 (Wash. 1994) (concluding summary judgment improper in case applying doctrine because plaintiff had engendered a fact question whether the "subsequent care was negligent in its own right" with expert testimony tending to establish that the defendants negligently failed to monitor the plaintiff's side effects of prescribed narcotics during the relevant time frame); *Forbes v. Stoekel*, 735 N.W.2d 536, 541 (Wis. Ct. App. 2007) (finding summary judgment improper because the plaintiff's expert testimony supported a finding that the defendant negligently performed a root canal in furtherance of a misdiagnosis within the applicable period of repose).  Because we conclude the plaintiffs have not presented evidence tending to establish any act or omission of the defendants after April 15, 1999, fell below the applicable standard of care, we conclude the district court properly granted the defendants' motions for summary judgment on this issue.

### IV.  Conclusion.

We conclude by noting that our decision in this case evidences the harsh consequences of statutes of repose that "reflect the legislative conclusion that a point in time arrives beyond which a potential defendant should be immune from liability for past conduct." *Albrecht*, 648 N.W.2d at 91 (citation and internal quotation marks omitted).  Iowa Code section 614.1(9) operated in this case to "extinguish" Erika's cause of action even before she and her husband knew it had accrued.  *Id.* at 90–91.  At least under the circumstances presented here, the fraudulent-concealment doctrine and the continuum-of-negligent-treatment doctrine do not preserve the plaintiffs' causes of action, and section 614.1(9) denies the plaintiffs a remedy for negligent acts or omissions occurring more than six years prior to the commencement of this action.

For the above reasons, we affirm the decision of the district court.

**AFFIRMED.**

All justices concur except Appel, J., who takes no part.