# IN THE COURT OF APPEALS OF IOWA

No. 20-1124
Filed October 6, 2021


**ELIZABETH DOWNING and MARCELLA BERRY AS CO-ADMINISTRATORS OF THE ESTATE OF LINDA BERRY,**
        Plaintiffs-Appellants,

**vs.**

**PAUL GROSSMAN, M.D. and CATHOLIC HEALTH INITIATIVES IOWA, CORP. D/B/A MERCY MEDICAL CENTER, MERCY MEDICAL CENTER-WEST LAKES, and MERCY SURGICAL AFFILIATES,**
        Defendants-Appellees.
_____


        Appeal from the Iowa District Court for Polk County, David Porter, Judge.


        Plaintiffs appeal from the district court's grant of summary judgment in defendants' favor. **REVERSED AND REMANDED**.


        Steve Hamilton and Molly M. Hamilton of Hamilton Law Firm, P.C., Clive, for appellants.

        Stacie M. Codr and Joseph F. Moser of The Finley Law Firm, P.C., Des Moines, for appellees.


        Considered by Bower, C.J., and Tabor and Ahlers, JJ.

**AHLERS, Judge.**

This is a medical malpractice action brought by the co-administrators of the estate of Linda Berry.[1]  The defendants are various individuals and organizations involved in Linda's medical care.[2]  The medical professionals assert the action is time-barred by the statute of repose set forth in Iowa Code section 614.1(9) (2018).  Linda's estate acknowledges the action would be time-barred by the statute of repose, but they assert the fraudulent-concealment exception applies to defeat the statute-of-repose defense.  The district court granted summary judgment in favor of the medical professionals, resulting in dismissal of Linda's estate's action.  Finding a genuine issue of material fact over whether Linda's estate's claim of fraudulent concealment defeats the medical professionals' statute-of-repose defense, we reverse the district court's grant of summary judgment and remand for further proceedings.[3]

---

[1] The suit was started by Linda Berry, but, after her death, her daughters, as co-administrators of Linda's estate, were substituted as plaintiffs.  For descriptive clarity, we will refer to the plaintiffs as "Linda's estate."  *Accord* Iowa R. App. P. 6.904(1) (encouraging use of names or descriptive terms for parties rather than use of designations).

[2] We will refer to all defendants, both individuals and organizations, collectively as "the medical professionals," unless context dictates need for reference to a specific defendant.

[3] The medical professionals' motion for summary judgment also alleges the claims of Linda's estate are barred by the statute of limitations and punitive damages are not available.  The court granted summary judgment solely on the statute of repose issue and did not address the statute of limitations or punitive damages issues. While Linda's estate briefed the statute of limitations and punitive damages issues to us, we decline to address these issues for the first time on appeal.  *See Plowman v. Ft. Madison Cmty. Hosp.*, 896 N.W.2d 393, 413 (Iowa 2017) (stating an appellate court functions as "a court of review, not of first view" (quoting *Cutter v. Wilkinson*, 544 U.S. 709, 718 (2005))).

## I.      Factual and Procedural Background.

Viewed in the light most favorable to Linda's estate, the record supports the following fact findings.  In 2004, Linda was hospitalized at Mercy Hospital[4] and a computerized tomography (CT) scan revealed a kidney mass.  In 2006, Linda was again treated at Mercy Hospital, this time for what was ultimately diagnosed as a urinary tract infection.  A CT scan again revealed a kidney mass.  Linda—and now her daughters following Linda's passing—contends she was never informed of the kidney mass on either occasion.

On October 1, 2009, Linda was again seen at Mercy Hospital, arriving at the emergency room with complaints of abdominal pain.  Dr. Paul Grossman,[5] a named defendant in this action, was consulted regarding Linda's complaints.  Linda was examined, and a CT scan was performed.  Linda was told the CT scan results were normal.  She was diagnosed with constipation and discharged.

As Linda's daughter drove her home, the daughter received a call from a resident doctor supervised by Dr. Grossman.  The resident told the daughter that Linda needed to return to the hospital because further review of the CT scan results caused the medical professionals to conclude "not everything is okay."  Upon returning to the hospital, Linda was told she had colitis and was given a prescription for an antibiotic. Unbeknownst to Linda, this CT scan also revealed the mass on Linda's right kidney, which had increased in size from when it was detected in the

---

[4] Defendant Catholic Health Initiatives Iowa, Corp. operates hospital facilities known as Mercy Medical Center and Mercy Medical Center-West Lakes.  For ease of reference, we will refer to either facility as Mercy Hospital, as differentiating between the two sites is not necessary to address the issues at hand.

[5] While the petition names Dr. "Grossman" as defendant, the doctor's last name is also spelled "Grossmann" throughout the record.  We will use "Grossman."

2004 and 2006 CT scans. Linda[6] and her daughters insist the doctors did not inform her of the kidney mass at that time. This claim is supported by the fact the discharge instructions given to Linda from Mercy Hospital do not mention the kidney mass.

Two days later, Linda was again in the Mercy Hospital emergency room for abdominal pain. Another CT scan was performed, which again showed the kidney mass. Another doctor examined Linda on this visit, but Dr. Grossman was informed of the radiology recommendation to follow up regarding the mass to ensure it was not cancerous. As with prior scans, Linda and her daughters both contend none of the medical professionals informed Linda of the mass.

On October 6, 2009, Dr. Grossman prepared and sent a letter to Linda's primary care physician outside the Mercy Hospital system detailing his treatment of her colitis. The letter makes no mention of the kidney mass. In December 2009, Dr. Grossman discharged Linda from his care.

On April 24, 2016, Linda was again in the Mercy Hospital emergency room after she fell and broke her arm. A CT scan again revealed the kidney mass, and Linda was referred to the University of Iowa Hospital for treatment of her arm. Upon discharge from Mercy Hospital, a nurse mentioned the kidney mass to Linda. According to Linda and her daughters, this was the first time they were informed of the mass. Linda was later diagnosed with metastatic renal cell carcinoma and died from that disease on May 22, 2019.

---

[6] Linda's testimony was preserved by deposition prior to her death.

Linda filed this suit alleging medical negligence in 2018, prior to her death. After her death, her daughters, as co-administrators of her estate, were substituted as plaintiffs. The medical professionals asserted an affirmative defense that the claims against them are barred by the statute of repose. Linda's estate responds by claiming the defense does not apply because the medical negligence was fraudulently concealed. The district court granted summary judgment in favor of the medical professionals on the basis that the alleged malpractice and the alleged concealment are in essence the same, thereby making the exception to the statute of repose inapplicable. Linda's estate appeals.

## II.      Timeliness of the Appeal

Before proceeding to the merits of the appeal, we first address the medical professionals' claim that the estate's appeal is untimely. Ordinarily, a notice of appeal must be filed within thirty days of the filing of the final order or judgment being appealed. Iowa R. App. P. 6.101(1)(b). However, if a motion is timely filed pursuant to Iowa Rule of Civil Procedure 1.904(2), the deadline for filing notice of appeal is thirty days after the filing of the ruling on the motion. *Id.* The timeliness of filing notice of appeal presents a jurisdictional issue—that is, without a timely filed notice, we are not at liberty to hear an appeal. *Valles v. Mueting*, 956 N.W.2d 479, 483 (Iowa 2021).

In this case, an issue over the timeliness of Linda's estate's notice of appeal arises because, after the district court filed its order granting the medical professionals' motion for summary judgment and dismissing the estate's claim, the estate filed a motion pursuant to rule 1.904(2) asking the district court to modify or amend its ruling. The district court denied the rule 1.904(2) motion. The estate

filed notice of appeal within thirty days of that ruling, but more than thirty days after the original summary judgment ruling was filed. The medical professionals assert the notice of appeal is untimely because the thirty-day appeal period is measured from the original summary judgment ruling rather than the ruling on the rule 1.904(2) motion due to the rule 1.904(2) motion simply rehashing the estate's resistance to the summary judgment motion. Therefore, according to the medical professionals, the motion was not a "proper" rule 1.904(2) motion, so it did not toll the time for filing notice of appeal. In support of their argument, the medical professionals rely on *Hedlund v. State*, which generally held that a rule 1.904(2) motion that is a pure "rehash of legal issues" addressed in the order that is the target of the rule 1.904(2) motion is not a proper rule 1.904(2) motion and does not extend the deadline for filing notice of appeal. 875 N.W.2d 720, 727 (Iowa 2016).

Due to amendments to the rules of appellate procedure that became effective March 1, 2017, we need no longer resolve the often murky issue whether a rule 1.904(2) motion is a "proper" motion that tolls the deadline for filing notice of appeal, as was required by *Hedlund*. The applicable rule of appellate procedure in effect when *Hedlund* was decided read as follows:

> 6.101(1) *Time for filing a notice of appeal from final orders and judgments.*
> . . . .
> b. *All other cases.* A notice of appeal must be filed within 30 days after the filing of the final order or judgment. However, if a motion is timely filed under Iowa R. Civ. P. 1.904(2) or Iowa R. Civ. P. 1.1007, the notice of appeal must be filed within 30 days after the filing of the ruling on such motion.

After the amendments that took effect March 1, 2017, rule 6.101(1)(b) remained unchanged, but a new subparagraph 6.101(1)(c) was added that reads:

   c. *Timely filing of motion defined.* For purposes of subparts *a* and *b* above, a motion is considered timely if it has been filed by the applicable deadline and asks the court to reconsider, enlarge, or amend its order, ruling, judgment, or decree. *Whether a motion is proper or not does not affect its timeliness.* Provided, however, that a motion will not be considered timely if the same party has previously filed a motion to reconsider, enlarge, or amend the court's order, ruling, judgment, or decree, unless the court has modified its order, ruling, judgment, or decree and the subsequent motion is directed only at the modification.

(Emphasis added.). If the plain language of newly added rule 6.101(1)(c) was not enough to make it clear the amendment superseded *Hedlund*'s holding that only a "proper" rule 1.904(2) motion extended the deadline for filing notice of appeal, the published comments to rule 6.101 remove any further uncertainty on this point:

   Rule 6.101[(1)](c) is intended to supersede prior case law that held a timely rule 1.904(2) motion must also have been "proper" to extend the time for appeal. *See, e.g., Hedlund v. State*, 875 N.W.2d 720, 725 (Iowa 2016). To obviate controversies over whether a rule 1.904(2) motion tolls the time for appeal, rule 6.101 authorizes any timely rule 1.904(2) motion to extend the appeal deadline, subject to an exception for successive motions.
   Under rule 6.101[(1)](c), the timely filing of a rule 1.904(2) motion extends the deadline for filing a notice of appeal or an application for interlocutory appeal. *See* Iowa R. App. P. 6.101(1)(b) & 6.104(1)(b)(2).

At the same time the noted changes to the rules of appellate procedure were made, changes were also made to Iowa Rule of Civil Procedure 1.904 to clarify that *Hedlund*'s "proper motion" requirement no longer applies.[7]

---

[7] The amendments to rule 1.904 also took effect March 1, 2017. The amendments included a modification to rule 1.904(2) to add "reconsidered" to the list of actions the district court could take in response to a motion under the rule—joining "enlarged" or "amended." The amendments also added new subrules 1.904(3) and 1.904(4) to address motions directed at other orders besides a trial ruling and successive motions. The published comments to rule 1.904 following the amendments echoed the comments accompanying the changes to the rules of appellate procedure:

The amended rules of civil and appellate procedure that removed *Hedlund*'s "proper motion" requirement became effective long before any of the relevant action in this case. Based on those rules, the estate's rule 1.904(2) motion extended the appeal deadline to thirty days after the ruling on the motion. As there is no dispute the estate's notice of appeal met that deadline, this appeal is timely and we have jurisdiction to hear it.

## III.    Summary Judgment Analysis

We review the grant of a motion for summary judgment for correction of errors at law. *Iowa Ass'n of Bus. & Indus. v. City of Waterloo*, 961 N.W.2d 465, 470 (Iowa 2021). "[W]e view the record in the light most favorable to the nonmoving party and allow that party all reasonable inferences that can be drawn from the record." *Wernimont v. Wernimont*, 686 N.W.2d 186, 189 (Iowa 2004). In viewing the evidence in that manner, a motion for summary judgment should only be granted if:

> the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

---

Rules 1.904(3) and 1.904(4) supersede prior case law that held a timely rule 1.904(2) motion must also have been "proper" to extend the time for appeal. *See, e.g., Hedlund v. State*, 875 N.W.2d 720, 725 (Iowa 2016). To obviate controversies over whether a rule 1.904(2) motion tolls the time for appeal, the rule authorizes any timely rule 1.904(2) motion to extend the appeal deadline, subject to one exception in rule 1.904(4) [addressing successive motions].

Under rule 1.904, the timely filing of a rule 1.904(2) motion extends the deadline for filing a notice of appeal or an application for interlocutory appeal. *See* Iowa R. App. P. 6.101(1)(b) & 6.104(1)(b)(2).

*Otterberg v. Farm Bureau Mut. Ins. Co.*, 696 N.W.2d 24, 27 (Iowa 2005) (quoting Iowa R. Civ. P. 1.981(3)).

The medical professionals contend summary judgment was properly granted because the claim is barred by the statute of repose. Linda's estate, on the other hand, contends there are factual disputes surrounding whether there was fraudulent concealment in this case, which the estate asserts would trigger an exception to the statute-of-repose defense.

Iowa's statute of repose as it relates to medical malpractice claims is set forth in Iowa Code section 614.1(9) as follows:

> [I]n no event shall any action be brought more than six years after the date on which occurred the act or omission or occurrence alleged in the action to have been the cause of the injury or death unless a foreign object unintentionally left in the body caused the injury or death.

Iowa Code § 614.1(9)(a). "Unlike the statute of limitations, under which a claim accrues for injuries caused by medical negligence when the plaintiff knew, or through the use of reasonable diligence should have known, of the injury, a statute of repose runs from the occurrence of the act causing the injury." *Est. of Anderson v. Iowa Dermatology Clinic, PLC*, 819 N.W.2d 408, 414 (Iowa 2012). Here, there is no dispute Linda's estate did not file suit within six years of the claimed act of malpractice that is alleged to have resulted in Linda's injury (i.e., Dr. Grossman's alleged failure to inform Linda of the kidney mass in 2009). As a result, the statute of repose is a complete defense to the estate's claim if the medical professionals are allowed to assert it. The estate seeks to avoid the statute-of-repose defense by application of the doctrine of fraudulent concealment.

Fraudulent concealment is a common law doctrine that "developed to 'prevent a party from benefiting from the protection of a limitations statute when by his own fraud he has prevented the other party from seeking redress within the period of limitations.'" *Id.* (quoting *Christy v. Miulli*, 692 N.W.2d 694, 702 (Iowa 2005)). The doctrine is a form of equitable estoppel that prevents a party from raising a statute-of-limitations or statute-of-repose defense in certain circumstances. *Id.* The doctrine survived codification of the statute of repose set forth in section 614.1(9). *Id.* If the doctrine applies, it "allows a plaintiff to pursue a claim that would be otherwise time barred under the statute of repose." *Id.*; *see also Christy*, 692 N.W.2d at 701 ("Equitable estoppel bars a defendant from pleading the running of statute of limitations [or statute of repose] if the plaintiff is induced to refrain from bringing a timely action by the defendant's fraud, misrepresentation, or deception." (quoting 51 Am. Jur. 2d *Limitations of Actions* § 380 (2000))).

The district court rejected the fraudulent-concealment claim because it viewed the medical professionals' alleged failure to disclose Linda's growing kidney mass as forming the heart of both the fraudulent-concealment and the medical-malpractice claims. True, the act of concealment must be separate from and subsequent to the liability-producing act of malpractice. *Anderson*, 819 N.W.2d at 414–15. A doctor's failure to disclose cannot be the ground of liability as well as the basis for the fraudulent concealment. *Van Overbeke v. Youberg*, 540 N.W.2d 273, 276 (Iowa 1995), *abrogated on other grounds by Christy*, 692 N.W.2d at 700–01. If such were permitted, there would essentially be no statute of limitations for an action regarding a doctor's negligent failure to inform a patient

of something.  *Id.*  In addition to separate acts, there must be temporal separation of the acts of negligence and the acts of concealment.  *Id.*  "[T]he concealment must take place after the alleged acts of negligence occurred."  *Id.*

We do not view the alleged medical negligence and concealment as broadly as the district court.  Viewing the evidence in the light most favorable to Linda's estate, the negligence occurred no later than Linda's initial visit to the Mercy Hospital emergency room in October 2009 when a Mercy Hospital radiologist reviewed Linda's then-fresh CT scan, noted a kidney mass, and recommended further evaluation, but the medical professionals failed to disclose this information to Linda.  By contrast, Linda's estate alleges the fraudulent concealment occurred when Dr. Grossman and the resident supervised by Dr. Grossman gained actual knowledge of Linda's kidney mass and concealed this information from her and her family in multiple direct interactions following Linda's examination in the hospital on October 1, 2009.  These interactions began when Linda and her daughter returned to the hospital after receiving the resident's cryptic call that "not everything is okay" in Linda's CT scan.  Linda's daughter testified this phone call occurred while they were on the interstate on the way home from the hospital, which provides the temporal break to constitute a separate act from the alleged negligence during the initial examination in the hospital immediately prior.  *See id.* These interactions ended in December 2009 when Dr. Grossman discharged Linda from her care after multiple follow-up appointments.  The doctors' failure to inform Linda of her kidney mass despite their actual knowledge of the kidney mass creates a fraudulent-concealment claim distinct from the medical professionals' prior failure to inform Linda of the mass due to their negligence.  In addition to

these concealments, Dr. Grossman's October 6 letter to Linda's primary care physician, which omitted any reference to the kidney mass, is a further act of concealment distinct from the alleged malpractice.

Having alleged acts of fraudulent concealment separate from the earlier acts of negligence, Linda's estate can defeat the statute-of–repose defense by pleading and proving by "a clear and convincing preponderance of the evidence" the following:

> (1) The defendant has made a false representation or has concealed material facts; (2) the plaintiff lacks knowledge of the true facts; (3) the defendant intended the plaintiff to act upon such representations; and (4) the plaintiff did in fact rely upon such representations to [the plaintiff's] prejudice.

*Anderson*, 819 N.W.2d at 414–15. Usually, a plaintiff asserting fraudulent concealment must prove the defendant "engaged in affirmative conduct to conceal the plaintiff's cause of action." *Id.* at 415. However, in instances where the plaintiff and defendant are in a confidential or fiduciary relationship—such as the doctor and patient relationship here—that requirement is relaxed. *Id.*

Viewing the evidence in the light most favorable to Linda's estate, including accepting the deposition testimony from Linda and her daughters, the record shows a genuine issue of material fact on all four elements. Linda and her daughter testified none of the medical professionals informed them of Linda's kidney mass until 2016, well after the mass was noted and follow-up recommended in the 2004, 2006, and 2009 CT scan reports. They further testified they were unaware of the tumor until 2016, and the late disclosure prevented Linda from seeking cancer treatment years sooner, leading to her death from the cancer in 2019.

As to evidence Dr. Grossman and the resident he supervised intended Linda to act upon their representations, the doctors' testimony establishes they personally knew of Linda's kidney mass by the time they discussed her CT scan report shortly after she initially left the hospital on October 1, 2009. They further testified the report was so concerning they called her back into the hospital specifically to discuss the kidney mass. Dr. Grossman testified this was only the second time in twenty-three years he had seen a patient called back into the emergency room after leaving the hospital. Nevertheless, Linda's daughter testified she and Linda spoke to the resident when they returned and he only discussed Linda's colitis. Regardless of the reason for this nondisclosure, viewing the evidence in the light most favorable to Linda's estate, Dr. Grossman knew of the mass but did not inform Linda or her family of the mass in multiple in-person follow-up appointments with her through her discharge in December 2009, and Dr. Grossman did not mention the mass in the October 6 letter to Linda's primary care provider that otherwise described Linda's October 1 emergency room visit and ensuing treatment.[8]

While Dr. Grossman and the resident hypothesize that they likely did disclose Linda's kidney based on their customary practices, they cannot be sure they did so, given that the interaction happened several years prior to their depositions and the specifics are not dictated in their notes from Linda's appointments. Linda's estate produced evidence supporting their claims, including

---

[8] The district court disregarded the letter because it states it was "mailed before doctor's review." Dr. Grossman explicitly testified he dictated the letter. Whether the letter accurately reflects Dr. Grossman's dictation even though the doctor did not review it before mailing is a question for the factfinder.

testimony from Linda and her daughters that the medical professionals did not inform them of Linda's tumor before 2016. Further supporting Linda's estate is the contemporaneous medical records that do not explicitly say Linda or her family were informed of the kidney mass prior to 2016 and Linda's discharge notes from her October 1, 2019 emergency room visit that does not mention the kidney mass. The evidence allows differing reasonable inferences as to whether the medical professionals failed to inform Linda and her family of Linda's kidney mass and then fraudulently concealed the mass from Linda and her family. These genuine issues of material fact preclude summary judgment at this time.

## III. Conclusion

Linda's estate filed a timely notice of appeal following the ruling on the rule 1.904(2) motion. Summary judgment is not appropriate on the medical professionals' statute-of-repose defense because genuine issues of material fact exist as to whether the medical professionals fraudulently concealed the kidney mass from Linda and her estate. The conflicting evidence is for the fact finder to resolve at trial. As such, we reverse the district court's grant of summary judgment and remand for further proceedings.

**REVERSED AND REMANDED.**