# IN THE COURT OF APPEALS OF IOWA

No. 21-0220
Filed December 15, 2021


**JENNA DETMER, ASHLEY BARNETT, SAMANTHA BENNETT and RIESHA TATE, on behalf of themselves and a class of similarly situated persons,**
Plaintiffs-Appellees,

**vs.**

**LA'JAMES COLLEGE OF HAIRSTYLING, INC. OF FORT DODGE, d/b/a LA'JAMES INTERNATIONAL COLLEGE, LYNDI, LTD., d/b/a LA'JAMES INTERNATIONAL COLLEGE, M&C BEAUTY SCHOOL, INC., d/b/a LA'JAMES COLLEGE OF HAIRSTYLING, INC. & LA'JAMES INTERNATIONAL COLLEGE, TIFFANY, LTD., d/b/a LA'JAMES COLLEGE OF HAIRSTYLING, INC. & LA'JAMES INTERNATIONAL COLLEGE, TRAVIS, LTD., d/b/a LA'JAMES COLLEGE OF HAIRSTYLING, INC. & LA'JAMES INTERNATIONAL COLLEGE, R&R CONSTRUCTION CO., d/b/a LA'JAMES COLLEGE OF HAIRSTYLING, INC. & LA'JAMES INTERNATIONAL COLLEGE, and JOHN & JANE DOES 1-12, in their individual and official capacities,**
Defendants-Appellants.

_____


Appeal from the Iowa District Court for Polk County, Paul D. Scott, Judge.


The defendants appeal the district court ruling certifying the class of former students. **AFFIRMED.**


James W. White and Jennifer E. Lindberg of Brown, Winick, Graves, Gross, & Baskerville, P.L.C., Des Moines, for appellants.

Benjamin G. Arato and Alison F. Kanne of Wandro & Associates, PC, Des Moines, and Eric Rothschild and Kirin Jessel of National Student Legal Defense Network, Washington, D.C., for appellees.

Heard by Greer, P.J., Badding, J., and Potterfield, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2021).

**POTTERFIELD, Senior Judge.**

La'James[1] appeals the district court ruling certifying the class of current and former students who allege La'James is liable for unfair and deceptive practices under the Iowa Consumer Fraud Act, fraudulent misrepresentation, negligent misrepresentation, fraudulent concealment, and breach of contract. La'James maintains the district court abused its discretion in certifying the class, arguing the district court "failed to adequately consider the predominance factor in fraud cases and did not apply or address the applicable law."

**I. Background Proceedings.**

Jenna Detmer and Ashley Barnett brought suit against La'James in March 2020 "on behalf of themselves and a class of all similarly situated individuals." They defined the class as:

> all persons who were enrolled or remain enrolled at any Iowa campus of La'James who were awarded financial aid and provided with a financial aid disbursement schedule, and whose financial aid disbursements were not made in accordance with that schedule, either due to a delay in disbursement by La'James, or their failure to disburse, financial aid.

The class was limited "to those students who have not yet received their final credit balance payment, who are still owed a balance that should have been paid to them,

---

[1] We refer to the defendants collectively as La'James. The defendants are La'James College of Hairstyling, Inc. of Fort Dodge, doing business as La'James International College; Lyndi, Ltd., doing business as La'James International College; M&C Beauty School, Inc., doing business as La'James College of Hairstyle, Inc. and La'James International College; Tiffany, Ltd., doing business as La'James College of Hairstyling, Inc. and La'James International College; Travis, Ltd., doing business as La'James College of Hairstyle, Inc. and La'James International College; R&R Construction Co., doing business as La'James College of Hairstyling, Inc. and La'James International College; and John and Jane Does 1-12.

or who received their credit balance after a delay, after March 20, 2018." The plaintiffs alleged La'James engaged in unfair and deceptive practices under the Iowa Consumer Fraud Act (count I), fraudulent misrepresentation (count II), negligent misrepresentation (count III), fraudulent concealment (count IV), and breach of contract (count V). Their allegations stemmed from La'James's handling of financial aid disbursements. The plaintiffs later amended their petition to add Samantha Bennett and Riesha Tate as named, representative plaintiffs.

In October, the representative plaintiffs moved the court to certify the putative class. They asserted the number of proposed class members was estimated to exceed 149 and that their claims "present a common nucleus of operative facts and have central issues in common." In the brief to support their motion for class certification, the plaintiffs alleged that many students who are eligible for financial aid due to their enrollment in La'James use the funds both for tuition and to cover living expenses. La'James, as part of its enrollment process, gives each student paperwork that details when the financial aid—including any credit balance remaining after tuition and fees were paid that would be disbursed to students directly—will be disbursed.[2] These disbursement times are standardized, which the students are told during a financial planning session with a La'James employee before the students begin classes. La'James's "Tuition Payment Schedule Disclosure"[3] states:

---

[2] Students also have the option for the credit balance to be returned to the Department of Education for a reduction in their loan amount.

[3] This form was included in the plaintiffs' appendix to the statement of facts.

A.    Subsidized and Unsubsidized Direct Loans:

1.    Subsidized and Unsubsidized Direct Loans are disbursed from the lender in two payments, one-half at a time. Disbursements to first-time undergraduate student borrowers will be delayed 30 days from the enrollment date.
The first disbursements of Title IV assistance and any loan disbursements at 30 days will be applied toward total tuition.

2.    The second disbursement(s) of Title IV assistance will be paid at the completion of:
Iowa Cosmetology - 525 hours and 15 weeks
Nebraska Cosmetology - 525 hours and 13 weeks
Illinois Cosmetology - 450 hours and 15 weeks
Iowa Teacher Training - 500 hrs and 13 weeks
Massage Therapy – 450 hours and 16 weeks
Esthetics - 375 hours and 15 weeks

3.    The third payments will be applied toward the total tuition balance from third disbursements of Title IV assistance at the completion of:
Iowa Cosmetology - 1050 hours and 30 weeks
Nebraska Cosmetology - 1050 hours and 26 weeks
Illinois Cosmetology - 900 hours or 30 weeks

4.    Fourth payments will be applied towards total tuition balance at completion of:
Iowa Cosmetology - 1575 hours and 45 weeks
Nebraska Cosmetology - 1575 hours and 39 weeks
Illinois Cosmetology - 1200 hours and 40 weeks

B. Pell Grants, depending on the class start date, will be disbursed at:

1.    0 hours, 525 hours and 15 weeks, 1050 hours and 30 weeks and 1575 hours and 45 weeks (IA Cosmetology).
2.    0 hours, 525 hours and 13 weeks, 1050 hours and 26 weeks, and 1575 hours and 39 weeks. (NE Cosmetology).
3.    0 hours, 450 hours and 15 weeks, 900 hours and 30 weeks, and 1200 hours and 40 weeks. (IL Cosmetology).
4.    0 hours, 500 hours and 13 weeks (Teacher Training).
5.    0 hours and at 375 hours and 15 weeks (Esthetics).
6.    0 hours and at 450 hours and 16 weeks (Massage).

The representative plaintiffs allege La'James engaged in a pattern of failing to timely disburse the financial aid on the schedule it promised, which prevented students from obtaining the surplus funds. Students who counted on the credit balance to help cover their living expenses were then forced to take out additional loans, pay late fees and penalties, or both. The plaintiffs also assert instances where the amount of aid they were told they would receive or the cost of attendance changed after their financial planning meeting with La'James, resulting

in smaller credit balances being paid to students than the students expected when they began their programs at La'James.

La'James resisted the certification of the class. In their written resistance, they asserted, "The court should deny Plaintiffs' motion because fraud cases such as this one are not suitable for class treatment." The "petition makes clear that individual issues on misrepresentations, omissions, and reliance will predominate, making class certification inappropriate here" and "individual issues on damages will predominate." In their brief in support of resistance, La'James asserted "the specific allegedly fraudulent statements will vary from plaintiff to plaintiff" and "[t]here is no consistency regarding the statements made."

In a reply brief, the plaintiffs argued "it [was] important to note the aspects of [their] motion that [La'James] did not resist," including that La'James "offer[ed] no opposition to class certification for [the breach-of-contract claim]" and "no objection to the appointment of class counsel."

At the hearing on the motion, in January 2021, the plaintiffs argued in support of certification, asserting that the anticipated class members "mostly come from lower economic backgrounds" and would not have the means to pursue claims outside of a class action, especially due to the fact that amount of damages "range[d] between a couple hundred dollars to a couple thousand dollars." The plaintiffs also noted that, "because this is financial aid and we're dealing with the federal government, the claims are very form-based, as in each student is going to have financial aid forms. They're all going to look the same." La'James responded that the four named plaintiffs "have four factually distinct, basically small claims cases against different La'James'[s] entities," and those claims would

require inquiries into the individual communications each plaintiff had with various La'James employees or representatives. La'James focused on the pleadings of the four named plaintiffs' petition, which included reference to "different players on the La'James side involved and different communications, texts, e-mails, phone calls, which amount to the alleged fraud or misrepresentation claim alleged by the Plaintiffs." La'James also denied that it did not resist certification on the breach-of-contract claim on the certification of the class representatives, stating, "just because we, the Defendants, didn't specifically address an issue doesn't mean we agree. We've resisted, blanket resistance."

On February 10, 2021, the district court granted the plaintiffs motion to certify the class as to all five counts. La'James appeals.

## II. Standard of Review.

"Our review of the district court's ruling granting or denying certification of a class action is limited because the district court enjoys broad discretion in the certification of class action lawsuits." *Vos v. Farm Bureau Life Ins. Co.*, 667 N.W.2d 36, 44 (Iowa 2003). "Whether or not we agree with the decision arrived at by the trial court is not the issue. The issue is one of abuse of discretion." *Anderson Contracting, Inc. v. DSM Copolymers, Inc.*, 776 N.W.2d 846, 849 (Iowa 2009) (citation omitted).

## III. Discussion.

### A. Class Certification Generally.

"Iowa Rules of Civil Procedure 1.261 through 1.263 govern class actions." *Roland v. Annett Holdings, Inc.*, 940 N.W.2d 752, 757 (Iowa 2020) (citation omitted). Rule 1.261 "permits the commencement of a class action if there is a

question of law or fact common to a class of persons so numerous that joinder of all persons is impracticable." *Vos*, 667 N.W.2d at 44–45 (citing Iowa R. Civ. P. 1.261). Then to certify a class action, the district court must find:

> a. The requirements of rule 1.261 [numerosity and commonality] have been satisfied.
> b. A class action should be permitted for the fair and efficient adjudication of the controversy.
> c. The representative parties fairly and adequately will protect the interests of the class.

*Id.* at 45 (alteration in original) (quoting Iowa R. Civ. P. 1.262(2)). In making its decision, the "court should consider all of the relevant evidence admitted at the class certification stage and resolve any factual disputes necessary to determine if the class certification requirements are met." *Anderson*, 776 N.W.2d at 855.

It is the plaintiffs' burden to establish "that a purported class of plaintiffs meets the prerequisites [of rule 1.261 and 1.262(2)]." *Vos*, 667 N.W.2d at 45. And "[a] failure of proof on any of the prerequisites is fatal to class certification." *Id.* But also, "[o]ur class-action rules are remedial in nature and should be liberally construed to favor the maintenance of class actions." *Anderson*, 776 N.W. 2d at 848 (citation omitted). And "the proponent's burden is light" at the class certification stage. *Freeman v. Grain Processing Corp.*, 895 N.W.2d 105, 114 (Iowa 2017) (citation omitted).

In deciding whether "[a] class action should be permitted for the fair and efficient adjudication of the controversy," Iowa R. Civ. P. 1.262(2)(b), the court is to consider the thirteen factors under rule 1.263(1). *See Roland*, 940 N.W.2d at 758. Those factors are:

> a. Whether a joint or common interest exists among members of the class.

b. Whether the prosecution of separate actions by or against individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class that would establish incompatible standards of conduct for a party opposing the class.

c. Whether adjudications with respect to individual members of the class as a practical matter would be dispositive of the interests of other members not parties to the adjudication or substantially impair or impede their ability to protect their interests.

d. Whether a party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making final injunctive relief or corresponding declaratory relief appropriate with respect to the class as a whole.

e. Whether common questions of law or fact predominate over any questions affecting only individual members.

f. Whether other means of adjudicating the claims and defenses are impracticable or inefficient.

g. Whether a class action offers the most appropriate means of adjudicating the claims and defenses.

h. Whether members who are not representative parties have a substantial interest in individually controlling the prosecution or defense of separate actions.

i. Whether the class action involves a claim that is or has been the subject of a class action, a government action, or other proceeding.

j. Whether it is desirable to bring the class action in another forum.

k. Whether management of the class action poses unusual difficulties.

*l.* Whether any conflict of laws issues involved pose unusual difficulties.

m. Whether the claims of individual class members are insufficient in the amounts or interests involved, in view of the complexities of the issues and the expenses of the litigation, to afford significant relief to the members of the class.

Iowa R. Civ. P. 1.263(1). "The criteria center on two broad considerations: 'achieving judicial economy by encouraging class litigation while preserving, as much as possible, the rights of litigants—both those presently in court and those who are only potential litigants.'" *Vos*, 667 N.W.2d at 45 (citation omitted).

Historically, Iowa case law provided, "The court will determine what weight, if any, to give to each of the listed factors." *Anderson*, 776 N.W.2d at 848. But

more recently, the Iowa Supreme Court has emphasized the importance of the "predominance factor" contained in rule 1.263(1)(e), which asks "[w]hether common questions of law or fact predominate over any questions affecting only individual members." *Compare Comes*, 696 N.W.2d at 318 ("[The party challenging certification] contends a showing of predominance is a condition precedent to certification, but we disagree; this is only one of thirteen factors to be considered."); *with Roland*, 940 N.W.2d at 759 ("We require that 'common questions of law or fact predominate over any questions affecting only individual members.' We have held this is a 'fundamental requirement for class certification.'" (second quotation quoting *Freeman*, 895 N.W.2d at 109)).

The court is not to consider the merits of the plaintiffs' claims in deciding whether the class should be certified. *Vos*, 667 N.W.2d at 45–46 ("Certification of a class action does not depend on a determination of whether the plaintiffs will ultimately prevail on the merits. Rather, it depends on whether or not the requirements of the rule governing class actions are met. . . . For this reason, the court does not conduct a preliminary inquiry into the merits of a suit in a certification hearing." (citations omitted)). "However, determining whether the requirements for class certification are met 'will entail some overlap with the merits of the plaintiff's underlying claim.'" *Freeman*, 895 N.W.2d at 120 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011)). "The class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Dukes*, 564 U.S. at 351 (altered for readability) (citation omitted). This means delving into the elements of the legal claims and considering how the plaintiffs will establish those elements as to the class as a whole. *Cf.*

*Freeman*, 895 N.W.2d at 109–11 (considering evidence the plaintiffs suggested would establish their case and if it applies widely); *accord id.* at 121 (citing *Newton v. Merrill Lynch, Pierce, Fenner, & Smith, Inc.*, 259 F.3d 154, 172 (3rd Cir. 2001) ("To determine whether the claims alleged by the putative class meet the requirements for class certification, we must first examine the underlying cause of action.")).

### B. Class Certification by Issue or Claim.

The parties seem to treat class certification as an all-or-nothing request. But rule 1.262(3)(a) allows the court to "[c]ertify an action as a class action with respect to *a particular claim or issue.*" (Emphasis added.) Here, the plaintiffs brought five counts against La'James, and the district court certified the class as to all five. We review the district court's decision as to each of the five counts individually. In doing so though, we narrow our review to the predominance factor, as that is what La'James focuses on in its appeal.[4] *See Hyler v. Garner*, 548 N.W.2d 864, 876 (Iowa 1996) ("[W]e will not speculate on the arguments [a party] might have made and then search for legal authority and comb the record for facts to support such arguments.").

"Predominance 'necessitates a "close look" at "the difficulties likely to be encountered in the management of a class action."'" *Freeman*, 895 N.W.2d at 118 (citations omitted). And "[t]he predominance inquiry is 'qualitative rather than quantitative'; merely '*a* common question does not end the inquiry.'" *Id.* (citation

---

[4] La'James was similarly focused in its resistance before the district court; it did not challenge class certification based on numerosity or whether the representative plaintiffs fairly and adequately will protect the interests of the class.

omitted). However, "[a] claim will meet the predominance requirement when there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individual position." *Vos*, 667 N.W.2d at 45 (citation omitted).

**Count I: Unfair and Deceptive Practices under the Iowa Consumer Fraud Act**

The plaintiffs brought suit against La'James for "unfair and deceptive practices" under the Iowa Consumer Fraud Act. *See* Iowa Code § 714H.3 (2020).[5] Section 714H.3(1) states:

> A person shall not engage in a practice or act the person knows or reasonably should know is an unfair practice, deception, fraud, false pretense, or false promise, or the misrepresentation, concealment, suppression, or omission of a material fact, with the intent that others rely upon the unfair practice, deception, fraud, false pretense, false promise, misrepresentation, concealment, suppression, or omission in connection with the advertisement, sale, or lease of consumer merchandise, or the solicitation of contributions for charitable purposes. For the purposes of this chapter, a claimant alleging an unfair practice, deception, fraud, false pretense, false promise, or misrepresentation must prove that the prohibited practice related to a material fact or facts.

Within the Consumer Fraud Act, "deception" means "an act or practice that is likely to mislead a substantial number of consumers as to a material fact or facts." Iowa Code § 714H.2(5). "'Unfair practice' means an act or practice which causes substantial, unavoidable injury to consumers that is not outweighed by any consumer or competitive benefits which the practice produces." *Id.* § 714.16(1)(n);

---

[5] We note the plaintiffs' petition asserts they have "received approval to file this proposed class action from the Iowa Attorney General." *See* Iowa Code § 714H.7 ("A class action lawsuit alleging a violation of this chapter shall not be filed with a court unless it has been approved by the attorney general.").

*see id.* § 714H.2(9) ("'Unfair practice' means the same as defined in section 714.16."). And, as the plaintiffs point out, class actions for claims involving the Consumer Fraud Act are explicitly provided for in the statute. *See id.* § 714H.7.

In their petition, some of the evidence the plaintiffs point to in support of their consumer-fraud claim include La'James's statement of their general financial aid disbursement practices, as memorialized in their student catalogue; the specific schedules upon which financial aid was to be disbursed, as included in both the La'James's student catalogue and the tuition payment schedule disclosure; and the standardized script used by La'James's employees during the mandatory financial planning meetings with students.

While the amount of credit or surplus that was promised to be disbursed to each students varies and would require inquiry into the individual's financial planning worksheet, this individual inquiry is more appropriate at a damages stage. *See Freeman*, 895 N.W.2d at 125 ("[T]he fact that a potential class action involves individual damage claims does not preclude certification when liability issues are common to the class." (alteration in original) (citation omitted)). But, importantly, La'James's statements about how and when financial aid would be disbursed appear to have been uniformly made. Uniform misrepresentations weigh in favor of certifying the class. *Cf. Vos*, 667 N.W.2d at 54 (holding the district court did not abuse its discretion when it denied class certification because, unlike here, "there [was] simply no evidence that the agents made uniform presentations, used scripts provided by Farm Bureau, and used the illustrations in all cases."); *see also Roland*, 940 N.W.2d at 760 (holding class certification was inappropriate because

"the theory of liability cannot be established with generalized evidence by the representative on behalf of the entire class").

The district court did not abuse its discretion in certifying the class as to the Consumer Fraud claim.

**Count II: Fraudulent Misrepresentation.**

To establish fraudulent misrepresentation, the plaintiffs have the burden to prove: "(1) representation, (2) falsity, (3) materiality, (4) scienter, (5) intent to deceive, (6) reliance, [and] (7) resulting injury and damage." *Lloyd v. Drake Univ.*, 686 N.W.2d 225, 233 (Iowa 2004) (citation omitted).

The plaintiffs claim La'James made fraudulent misrepresentations when their representatives told students La'James would follow the financial aid disbursement practices as outlined in the student catalogue and tuition payment schedule disclosure. Proving this claim relies on generalized evidence provided to each student. While the plaintiffs also point to individual statements made by various La'James employees to students regarding the late and reduced payments, these distinctive allegations involve communications that came—as the plaintiffs argue in their appeal brief—"*after* the common representations about aid disbursement had been made and *after* the date for those disbursement to be made had passed." In other words, by the time the plaintiffs "inquire[d] as to the status of their late payments, [La'James's] common misrepresentations about the timing of the payments—and the common misconduct of not making the payments on time—[would have] already occurred." Because the initial representations were uniform and they are the representations at issue in deciding the fraudulent-

misrepresentation claim, common questions predominate over individual ones and class certification is appropriate.

The district court did not abuse its discretion in certifying the class for the fraudulent-misrepresentation claim.

**Count III: Negligent Misrepresentation.**

Iowa adopted the definition of negligent misrepresentation found in the Restatement (Second) of Torts, which states:

> (1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.
> (2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered
> (a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and
> (b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.
> (3) The liability of one who is under a public duty to give the information extends to loss suffered by any of the class of persons for whose benefit the duty is created, in any of the transactions in which it is intended to protect them.

*Bagelmann v. First Nat'l Bank*, 823 N.W.2d 18, 30 (Iowa 2012) (quoting Restatement (Second) of Torts § 552, at 126–27 (1977)).[6]

---

[6] At oral argument, the plaintiffs argued La'James failed to preserve error regarding the certification of the class as to the negligent-misrepresentation claim. We recognize La'James generally focused its arguments against class certification on the "fraud" claims. But negligent misrepresentation involves an element of reliance, which La'James argued would require individualized proof to establish, thereby making class certification inappropriate. La'James preserved error.

As we understand it, this claim focuses on the standardized statements made to prospective and enrolling students regarding La'James financial disbursement practices, including how credits are disbursed directly to individuals, and at what timeline the school makes these disbursements during students' enrollment period. The plaintiffs allege they "depended on the representations regarding credit balance payments to ensure that they would be able to afford their living expenses while completing the program." As with the consumer-fraud claim, the evidence to support this claim is uniform and generalized, so class certification makes sense.

We cannot say the district court abused its discretion in certifying the class as to the negligent-misrepresentation claim.

**Count IV: Fraudulent Concealment.**

To prove fraudulent concealment, the plaintiffs have the burden to prove: "(1) [t]he defendant has made a false representation or has concealed material facts; (2) the plaintiff lacks knowledge of the true facts; (3) the defendant intended the plaintiff to act upon such representations; and (4) the plaintiff did in fact rely upon such representations to his prejudice." *Estate of Anderson ex rel. Herren v. Iowa Dermatology Clinic, PCL*, 819 N.W.2d 408, 415 (Iowa 2012) (citation omitted).

With their fraudulent-concealment claim, the "false representations" and "material facts" the plaintiffs rely on involve that "La'James would not follow the financial aid disbursement schedule described in the 2019 La'James Student Catalogue and the La'James Tuition Schedule Disclosure." They also point to the fact that La'James concealed "that after August 2017, financial aid would be

disbursed directly from La'James and not from the Department [of Education], and that delay in disbursing financial aid or making credit balance payments was solely due to the conduct of the Defendants." These claims rely on standardized statements, made in writing, to all students. And, like with the other claims, we note that uniform misrepresentations weigh in favor of class certification. But here, the plaintiffs also rely on the representations "memorialized in each student's Financial Planning Worksheet," which we understand to mean the specific amounts of credits and at which disbursement period those would be disbursed to the student. The need for individualized evidence and inquiry weighs against certifying the class.

It is not clear to us how much inquiry into the specific amounts and individual schedules provided to students is necessary to establish the plaintiffs' claim of fraudulent concealment. So, because district court enjoys broad discretion in certifying a class and because "a safety net is provided for cases in which certification is improvidently granted: the court may decertify the class at a later time," *Freeman*, 895 N.W.2d at 119 (citation omitted), we defer to the district court's conclusion and find no abuse of discretion in certifying the class as to the fraudulent-concealment claim.

**Count V: Breach of Contract.**

"Generally, to establish a claim for a breach of contract" the plaintiff must show:

> (1) the existence of a contract; (2) the terms and conditions of the contract; (3) that it has performed all the terms and conditions required under the contract; (4) the defendant's breach of the contract in some particular way; and (5) that plaintiff has suffered damages as a result of the breach.

*Iowa Arboretum, Inc. v. Iowa 4-H Found.*, 886 N.W.2d 695, 706 (Iowa 2016) (citation omitted).

We begin by determining if La'James preserved error to challenge the certification of the class on the breach-of-contract claim.

In both their written reply to La'James's resistance to class certification and orally at the hearing on the motion, the plaintiffs pointed out to the district court that La'James failed to present any argument against class certification that is specific to the breach-of-contract claim. At the district court hearing, La'James responded that it was resisting class certification on the claim but conceded it "didn't specifically address it." At oral argument before this court, the plaintiffs raised the issue as one of error preservation, arguing La'James's failure to make a specific argument against the breach-of-contract claim to the district court prevented them from challenging the class certification as to that claim on appeal. La'James responded that the plaintiffs did not contest error preservation in their appellate brief. But it is the court, not the parties, that determines whether error has been preserved—even in the face of an opposing party's acquiescence. *See, e.g.*, *Top of Iowa Co-Op v. Sime Farms, Inc.*, 608 N.W.2d 454, 470 (Iowa 2000) ("In view of the range of interests protected by our error preservation rules, this court will consider on appeal whether error was preserved despite the opposing party's omission in not raising this issue at trial or on appeal."); *Bontrager Auto Serv., Inc. v. Iowa City Bd. of Adjustment*, 748 N.W.2d 483, 486 (Iowa 2008); *State v. Young*, No. 09-1938, 2011 WL 4579863, at *5 (Iowa Ct. App. Oct. 5, 2011) ("In spite of the

State's acquiescence, we may consider the issue of error preservation sua sponte.").

After reviewing the record, we agree that La'James failed to make an argument against class certification specific to the breach-of-contract claim, and error is not preserved. Therefore, we affirm the district court's certification of the class as to this claim without considering the merits.

## IV. Conclusion.

Finding no abuse of discretion, we affirm the district court's decision to certify the class of plaintiffs as to all five counts.

**AFFIRMED.**